**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

PAUL BLINKINSOP,
*Defendant-Appellant.*

No. 09-30120

D.C. No.
4:08-CR-00117-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Submitted April 5, 2010*
Seattle, Washington

Filed May 27, 2010

Before: Alfred T. Goodwin, Michael Daly Hawkins and
N. Randy Smith, Circuit Judges.

Opinion by Judge Goodwin

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

David F. Ness, Federal Defenders of Montana, Great Falls, Montana, for the defendant-appellant.

Cyndee L. Peterson, Assistant U.S. Attorney, Missoula, Montana, for the plaintiff-appellee.

_____

## OPINION

GOODWIN, Senior Circuit Judge:

Paul Blinkinsop, who pled guilty to one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2), appeals his sentence as to his 97-month imprisonment and three special conditions of his 5-year supervised release. We affirm in part, vacate in part, and order a limited remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, the Wyoming Internet Crimes Against Children Task Force determined that a computer registered to Blinkinsop contained images of child pornography available to other users on an Internet shared program, LimeWire File Share.[1] This information was reported to the Air Force Office of Special Investigations, which, with Immigration and Customs Agents, interviewed Blinkinsop, an Air Force Staff Sergeant, stationed at Malmstron Air Force Base in Great Falls, Montana. During the interview, Blinkinsop admitted that he viewed child pornography over the Internet via his computer and that he used search terms, such as "teenage" and "school girl."

When Blinkinsop refused consent to search his computer, investigators obtained a search warrant and seized his computer and external storage equipment from his residence. A forensic analysis of Blinkinsop's equipment revealed more

_____

[1]"LimeWire is a peer-to-peer file sharing application that connects users who wish to share data files with one another." *United States v. Lewis*, 554 F.3d 208, 211 (1st Cir. 2009).

than 600 images of child pornography created from 2002-2008, including 42 videos and 99 still pictures, with some of the children younger than 12 years old. Videos on Blinkinsop's computer included depictions of prepubescent girls being penetrated in anal and vaginal intercourse, bondage, and urination.

Blinkinsop was indicted in Count I for Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), and, in Count II, for Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); the indictment included a forfeiture allegation under 18 U.S.C. § 2252A(a)(3) for Blinkinsop's computer and data-storage equipment. At his change-of-plea hearing, Blinkinsop admitted that he sought and downloaded child pornography from the Internet. He pled guilty to receiving child pornography and admitted the forfeiture allegation. In accordance with Blinkinsop's plea agreement, the government dismissed Count II for possessing child pornography.

The probation office calculated Blinkinsop's advisory Sentencing Guidelines range at 97 to 121 months of imprisonment and his supervised release term of 5 years to life under 18 U.S.C. § 3583(k). The district judge considered the 18 U.S.C. § 3553(a) factors and weighed the serious nature of Blinkinsop's crime against his personal record, military service, and lack of criminal history before imposing the low-end, 97-month imprisonment term with 5 years of supervised release. In addition, the judge imposed thirteen special conditions of supervised release without explanation. Although the judge asked counsel if they had any statements that they wanted placed on the record "as to why sentence as stated should not be the judgment entered," neither counsel objected to the sentence, and Blinkinsop thanked the judge for it. Sentencing Transcript at 18, 21.

On appeal, Blinkinsop challenges his imprisonment term as being unreasonable, because the district judge allegedly failed

to take into account fully his background, potential for rehabilitation, and low recidivism risk. He also argues that his supervised-release special conditions, relating to his proximity to children, possession of a camera phone, and ban on his access to the Internet are unreasonable and overbroad.

## DISCUSSION

### I.  Imprisonment Term

We review a district judge's sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). This two-part analysis requires determining: (1) whether there was procedural error in formulating the sentence and (2) whether the sentence is substantively reasonable. *Id.* "[W]hen the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Rita v. United States*, 551 U.S. 338, 351 (2007); *see United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008) (en banc) (adopting this standard in our circuit). Since " '[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court,' " our determination that "a 'different sentence [i]s appropriate is insufficient to justify reversal of the district court.' " *United States v. Carter*, 560 F.3d 1107, 1120 (9th Cir.) (quoting *Gall*, 552 U.S. at 51), *cert. denied*, 130 S. Ct. 273 (2009).

### A.  *Sentencing Procedure*

**[1]** Because Blinkinsop did not object to his imprisonment term at sentencing, the district judge's sentencing procedure is reviewed for plain error.[2] *United States v. Sylvester Norman*

---

[2]Plain error is (1) an error that (2) is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993) (citations, quotation marks, and alterations omitted).

*Knows His Gun, III*, 438 F.3d 913, 918 (9th Cir. 2006). Proper sentencing procedure requires that, before imposing sentence, the district judge: (1) correctly calculate the Sentencing Guidelines range; (2) treat the Guidelines as advisory; (3) consider the 18 U.S.C. § 3553(a) factors;[3] (4) choose a sentence that is not based on clearly erroneous facts; (5) adequately explain the sentence; and (6) not presume that the Guidelines range is reasonable. *Carty*, 520 F.3d at 991-93; *Gall*, 552 U.S. at 49-50. Adequate explanation not only derives from the judge's pronouncement of the sentence, but "may also be inferred from the PSR [presentence investigation report] or the record as a whole." *Carty*, 520 F.3d at 992.

At sentencing, the district judge recounted the calculation of Blinkinsop's sentence under the Sentencing Guidelines, including the adjustments that he had made.[4] Blinkinsop's

---

[3]These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, afford adequate deterrence to criminal conduct, to protect the public from further crimes by the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a) (citations and quotation marks omitted).

[4]The sentencing judge accepted the findings of fact in Blinkinsop's PSR, since there were no objections, and his plea agreement. The judge also accepted the Probation Office's calculation of Blinkinsop's Guidelines sentence, which was a total offense level of 30. This included a "two-level increase for the depiction of prepubescent minors in the material [U.S.S.G. § 2G2.2(b)(2)]; an additional four-level increase for the depiction of sadistic and masochistic conduct depicted in the material [U.S.S.G.§ 2G2.2(b)(4)]; an additional two-level increase for the use of a computer [U.S.S.G.§ 2G2.2(b)(6)]; and a five-level increase for the number of images being in excess of 600 [U.S.S.G.§ 2G2.2(b)(7)]." Sentencing Transcript at 4-5. Blinkinsop's sentence included the following

total offense level of 30 and his criminal history of I, the lowest level, yielded an advisory Sentencing Guidelines range of 97 to 121 months of imprisonment. The judge explained to Blinkinsop that the Sentencing Guidelines range was "advisory" and "not binding upon the court," but that it did "serve as a kind of starting point or an initial benchmark . . . for determination of an appropriate sentence." Sentencing Transcript at 10. The judge also addressed the § 3553(a) factors.[5]

---

downward adjustments: two-levels, because Blinkinsop's conduct was limited to receipt of materials concerning the sexual exploitation of minors rather than distribution, U.S.S.G.§ 2G2.2(b)(1); two-levels for acceptance of responsibility, U.S.S.G. § 3E1.1(a); and one level for timely notification of his plea on motion of the government.

[5]Concerning the § 3553(a) factors, the sentencing judge explained:

Those [§ 3553(a)] factors are to be weighed and considered in your case, and indeed, they have been. And they include not only the kinds of sentences legally available, which we have spoken to, but the nature and the circumstances of these offenses—or the offense; your history and characteristics. And we are going to say more about that.

But *I also have an obligation to impose a sentence that reflects the seriousness of this criminal conduct; that will promote respect for the law and afford an adequate deterrent not only to you, but to others who might elect to engage in this kind of conduct.*

*I have an obligation to fix a sentence that provides appropriate and just punishment; that will serve to incapacitate you, to the extent that is necessary, . . . and appropriate to protect the public.*

I am going to make provision in the sentence by way of recommendation that you be afforded an opportunity for residential sex offender treatment while in custody. . . . I am satisfied those are good programs. And they provide help to those who will participate in them. . . .

I also have an obligation in making this determination to avoid unwarranted sentencing disparities within the federal criminal justice system. And in the process, to be mindful of decisions from the United State[s] Supreme Court . . . . [a]nd Ninth Circuit decisions . . . . All of those factors are to be considered, and, indeed, have been considered in your case.

Sentencing Transcript at 11-12 (emphasis added).

In determining Blinkinsop's sentence, the sentencing judge emphasized that Blinkinsop's crime of receiving child pornography was serious. The judge weighed the serious nature of Blinkinsop's crime against his family ties, military service, and lack of a criminal record:

> I balance those obviously serious matters against what on another front is the service that you have provided and . . . your service record. And those are positive considerations which bear upon this process, as well.
>
> My obligation, as I have said, is to take all of these factors together and to weigh them and to make a determination of an appropriate sentence. And after having done so, I have concluded that a sentence at the low end of this advisory guideline sentence range, while not binding, . . . does address the matter adequately; and that a low end sentence on the guideline program will be adequate in this case.

Sentencing Transcript at 13. Thereafter, the district judge sentenced Blinkinsop to an imprisonment term of 97 months and 5 years of supervised release.

**[2]** Blinkinsop concedes that the sentencing judge correctly calculated his Guidelines range. He has not alleged that the judge relied on erroneous facts. The judge treated the Guidelines as advisory, and he considered the § 3553(a) factors, including the nature and circumstances of the crime in conjunction with Blinkinsop's military service and family support. In addition to the sentencing judge's explanation of Blinkinsop's sentence, his PSR advises that no factors were identified under § 3553(a) that would warrant sentencing Blinkinsop outside the advisory Guidelines range. The sentencing judge did not plainly err in carefully calculating

Blinkinsop's imprisonment term at the lowest end of the Guidelines range.

## B. *Substantive Reasonableness*

**[3]** Substantive reasonableness of a sentence, reviewed for abuse of discretion, is applicable in all sentencing decisions and is not affected by failure to object. *United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009). Having determined that Blinkinsop's sentence was procedurally proper, we consider in our substantive-reasonableness review the "totality of the circumstances" and recognize that "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Gall*, 552 U.S. at 51 (citation and internal quotation marks omitted). We " 'assume that district judges know the law and understand their obligation to consider all of the § 3553(a) factors, not just the Guidelines.' " *Autery*, 555 F.3d at 873 (quoting *Carty*, 520 F.3d at 992).

**[4]** This court previously has confronted the arguments relating to substantive reasonableness raised by Blinkinsop on appeal. In *Carty*, the defendant convicted of sexually abusing his young niece, argued that the Guidelines sentence was "much greater than necessary" to achieve the goals of § 3553(a). 520 F.3d at 990. Like Blinkinsop's PSR, Carty's PSR advised that there was "no information concerning the offense or the offender which would warrant a departure from the sentencing guidelines." *Id.* The court imposed a Guidelines sentence, which this court held was substantively reasonable. *Id.* at 996. We determined that, when a district judge imposes a sentence within the Guidelines range, "it is probable that the sentence is reasonable," because the judge's application of the § 3553(a) factors accords with the Sentencing Commission's independent application of those factors in the " 'mine run of cases.' " *Id.* at 994 (quoting *Rita*, 551 U.S. at 351); *see Carter*, 560 F.3d at 1120 (determining that the Guidelines sentence, reflecting a defendant's criminal history

and applying the § 3553(a) factors, was substantively reasonable and recognizing our deference to the sentencing judge).

**[5]** When a district judge has considered the § 3553(a) factors and the totality of the circumstances supports the sentence, we have held that the sentence is substantively reasonable and that "[w]e may not reverse just because we think a different sentence is appropriate," particularly when a convicted defendant reargues his leniency plea from district court. *United States v. Overton*, 573 F.3d 679, 700 (9th Cir.) (citation and internal quotation marks omitted) (receipt-of-child-pornography case, where sentence was at the high end of the Guidelines range and the district judge considered the § 3553(a) factors as well as the needs for treatment and protection of the public), *cert. denied*, 130 S. Ct. 480 (2009).

**[6]** In this case, Blinkinsop admittedly obtained in excess of 600 images, including 42 videos, showing prepubescent children engaged in sadistic and masochistic sexual acts by using specific search terms over the Internet. These facts contradict Blinkinsop's contention that he was merely a "passive collector of [child] pornography" and "a marginal player in the overall child pornography business." Appellant's Br. at 16, 18. The images he collected were downloaded from the Internet, then moved and saved in electronic storage equipment. Blinkinsop incurred specific sentencing enhancements because his child pornography images involved the use of a computer and more than 600 images. U.S.S.G. §§ 2G2.2(b)(6), (b)(7). Blinkinsop has not challenged the application of these enhancements.

The sentencing judge recognized the serious nature of the crime to which Blinkinsop had pled guilty:

> I am obliged to consider, and in fact, have considered other factors that are to be taken into account, one of which is the statutory penalty program that Congress has prescribed. And as you know from

prior appearances before the court, *this case requires a minimum of five years of confinement*. But the *more significant component* of this that we must recognize *is that the Congress has spoken to say that a sentence of up to 20 years, 240 months, in confinement is warranted*. That plainly speaks to the seriousness of the offense, in the view of the Congress of the United States.

. . . .

But this remains a serious crime. And it is clear that the Congress has spoken; that the Congress has spoken with good reason, because *it is a clear reality of this kind of criminal conduct that every time one of these web sites is opened and every time one of these images is viewed, additional harm is visited upon the victim. And the tiny children who frequently are displayed in these images are truly victims.* And they have absolutely no capacity to control the continued dissemination of these images.

*In this instance, there were literally hundreds of such images that were part of the record.*[6]

Sentencing Transcript at 10, 12-13 (emphasis added).

[7] After reviewing the legislative history of 18 U.S.C. § 2252, we held that "the primary 'victims' that Congress sought to protect by enacting § 2252 were . . . the children involved in the production of pornography." *United States v.*

---

[6]Blinkinsop received a two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for using a computer for receipt of child pornography. We have explained that "[v]isual depictions in a computer are compiled and stored in graphics files, much like photographs are complied and stored in books or magazines. . . . [T]he computer user can separately view, copy, delete, or transmit each discrete graphics file." *United States v. Fellows*, 157 F.3d 1197, 1201 (9th Cir. 1998).

*Boos*, 127 F.3d 1207, 1211 (9th Cir. 1997).[7] Photographs and films showing juveniles engaged in sexual activity " 'is intrinsically related to the sexual abuse of children,' " because this documentation is " 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.' " *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)); *see Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people."). The children involved in pictorial and cinematic pornography additionally endure ongoing harm because their images have been preserved in a permanent medium.[8] Criminalizing possession and receipt of child pornography gives an incentive to such individuals to destroy these materials to alleviate continuing harm to the children exploited. *See Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The State's ban on possession and viewing encourages the possessors of [child pornography] to destroy them.").

**[8]** The district judge considered the § 3553(a) factors and the totality of circumstances supporting Blinkinsop's sentence. Blinkinsop's arguments omit the recognition that the children depicted in the pornography that he received, viewed, stored, and transmitted are the real victims of his crime and

---

[7]*See United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008) (recognizing that "merely possessing [or receiving] child pornography is not a victimless crime," because "it fuels the demand for the creation and distribution of child pornography," and evidence shows "the harm that children suffer when they are used in the creation of child pornography[,] . . . when that pornography is distributed to others"), *cert. denied*, 129 S. Ct. 1600 (2009).

[8]The Supreme Court has recognized that

> [b]ecause the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

*Ferber*, 458 U.S. at 759 n.10 (citation and quotation marks omitted).

that time is required for the sex-offender treatment during incarceration that Blinkinsop needs for his child-pornography addiction. In addition to being procedurally correct, Blinkinsop's imprisonment term, the lowest under the Sentencing Guidelines, is substantively reasonable, because it is well supported by the record and the governing law.

## II.   Special Conditions of Supervised Release

**[9]** Blinkinsop concedes that he did not object at sentencing to the special conditions of his supervised release that he challenges on appeal. Therefore, our review is limited to plain error. *United States v. Rearden*, 349 F.3d 608, 618 (9th Cir. 2003); *see United States v. Sullivan*, 451 F.3d 884, 894 (D.C. Cir. 2006) ("Standing mute [after a sentence has been pronounced] is not an option, not if a litigant wishes to avoid a plain error standard of review on appeal."). Under 18 U.S.C. § 3583(d), a district judge has discretion to order special conditions of supervised release that are "reasonably related to the factors" in 18 U.S.C. § 3553(a).[9] Because the sentencing

---

[9]In pertinent part, § 3553(a) provides:

**(a) Factors to be considered in imposing a sentence**.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respectfor the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant;

   and

judge has all the evidence and its impressions of a defendant's credibility, we accord wide latitude to its imposition of supervised-release conditions, *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1600 (2009), "including restrictions that infringe on fundamental rights," *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998). Special conditions are permissible, provided that "they are reasonably related to the goal[s] of deterrence, protection of the public, or rehabilitation of the offender, and involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." *Rearden*, 349 F.3d at 618 (citation and internal quotation marks omitted); *see United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) ("The conditions imposed run afoul of the supervised release statute because there is no reasonable relationship between them and either deterrence, public protection or rehabilitation."). Blinkinsop has the burden of showing that the special conditions that he appeals "involve[ ] a greater deprivation of liberty than is reasonably required to achieve deterrence, public protection, and offender rehabilitation." *United States v. Jeremiah*, 493 F.3d 1042, 1047 (9th Cir. 2007).

**[10]** "A condition of supervised release does not have to be related to the offense of conviction," because the sentencing judge is statutorily required "to look forward in time to crimes that may be committed in the future" by the convicted defendant. *United States v. Wise*, 391 F.3d 1027, 1031 (9th Cir. 2004); *see* 18 U.S.C. § 3553(a)(2)(C) (stating a need for the sentence imposed is "to protect the public from further crimes of the defendant"). The sentencing judge "must explain [a sentence] sufficiently to permit meaningful appellate review" and to communicate "that the parties' arguments have been

---

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

heard, and that a reasoned decision has been made." *Carty*, 520 F.3d at 992; *see United States v. Cherer*, 513 F.3d 1150, 1159 (9th Cir. 2008) (affirming 293-month term of imprisonment for defendant convicted of attempting to entice a minor to engage in sex acts, because the sentence was correctly calculated within the advisory Sentencing Guidelines, the § 3553(a) factors were considered, and "the sentencing judge provided an adequate explanation for the sentence"). A district judge need not state at sentencing the reasons for imposing each condition of supervised release, *if it is apparent from the record. Daniels*, 541 F.3d at 924. "However, to impose a condition that implicates a significant liberty interest, the district court must support its decision on the record with evidence justifying the condition." *Id.*

Relevant to this case is the statutory mandate that conviction under § 2252A requires supervised release for a "term of years *not less than 5*, or life." 18 U.S.C. § 3583(k) (emphasis added); *see* U.S.S.G. § 5D1.2(b)(2) (providing that "the length of the term of supervised release shall not be less than the minimum term of years specified for the offense . . . and may be up to life, if the offense is a sex offense"). Therefore, Blinkinsop was sentenced to the mandatory minimum term of supervised release during which his conditions apply, special and otherwise, as opposed to life.[10] He challenges three special conditions of his supervised release: staying away from places frequented by children (Special Condition 4), possessing a camera phone (Special Condition 7), and banning his possession of a computer capable of accessing the Internet (Special Condition 13).

A. *Staying Away From Places Frequented by Children*

Special Condition 4 provides: " Defendant shall not go to or loiter near school yards, parks, play grounds, arcades, or

---

[10]Blinkinsop's counsel noted at sentencing that "the law provides for a lifetime of supervised release." Sentencing Transcript at 7.

other paces primarily used by children under the age of 18." Judgment at 4 (Special Conditions of Supervision). Blinkinsop argues that prohibiting him from going to or loitering near any school or place primarily used by children under 18 is overbroad. This court has upheld a more restrictive condition prohibiting a defendant, convicted of a child-pornography crime, for life from "frequent[ing], or loiter[ing], *within 100 feet* of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or other places primarily used by persons under the age of 18" or living "within direct view" of any of these areas. *Daniels*, 541 F.3d at 928 (alterations and emphasis added); *see Rearden*, 349 F.3d at 620 (affirming special condition prohibiting defendant convicted of a child-pornography crime from "frequenting or loitering *within one hundred feet* of schoolyards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or other places primarily used by children under the age of eighteen"); *see also United States v. Brogdon*, 503 F.3d 555, 558 (6th Cir. 2007) (affirming supervised-release conditions prohibiting defendant convicted of a child-pornography crime from "engag[ing] in *any* direct or indirect contact with *any* child under the age of eighteen," requiring that he "not loiter near schoolyards, playgrounds, swimming pools, arcades, theaters, or other places frequented by children," that "he not date any woman who has children under the age of eighteen in her custody," that "his place of residence not be located close to any childhood parks, schools, playgrounds, public pools or *any other location frequented by children*," and that his "probation officer may impose a curfew if it is deemed necessary" (alteration and emphases added)).

Like Blinkinsop, Daniels had no prior record of sex-crime convictions; he was convicted of receiving child pornography and had downloaded hundreds of images of child pornography from the Internet, including many "sadomasochistic images of prepubescent children and over 600 images depicting identified victims of child sexual abuse." *Daniels*, 541 F.3d at 927 (internal quotation marks omitted). Our court con-

cluded that there was no error in prohibiting his access to children, because the "sheer volume" of Daniel's child-pornography collection suggested that he "at least had a sexual interest in children and that preventing his loitering around or living near areas where children frequent was reasonably related to his offense of conviction and to the goals of rehabilitating Daniels and protecting the public from his potential sexual interest in children." *Id.* at 928. In addition, Special Condition 9, which Blinkinsop did not appeal, states that, if required, he must "register as a sex offender" under the Adam Walsh Sex Offender Registration and Notification Act of 2006 ("SORNA"), 42 U.S.C. §§ 16901-16981, which registration would result in more stringent restrictions.[11] Judgment at 4 (Special Conditions of Supervision). During pretrial supervision, Blinkinsop was subject to SORNA conditions, including electronic monitoring.

[11] Although the sentencing judge did not explain his reasoning in imposing Special Condition 4, the record shows Blinkinsop's continuing sexual interest in children, including images of sadistic and masochistic acts performed on prepubescent children. *See United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007) ("Circuit law establishes that a sentencing judge is not required to articulate on the record at sentencing the reasons for imposing each condition of supervised release, where we can determine from the record whether the court abused its discretion." (footnote, citation, and internal quotation marks omitted)). After analyzing Blinkinsop's child-pornography propensities and background, the probation officer recommended this special condition in the PSR, and the district judge adopted it. *See Daniels*, 541 F.3d at 921 (recognizing that "issues [including addictive behaviors] underlying sex offenses are typically deeply ingrained and require life

---

[11]With SORNA, Congress established a national registration system for sex offenders. 42 U.S.C. § 16901. *See United States v. Utesch*, 596 F.3d 302, 306-07 (6th Cir. 2010) (discussing requirements and application of SORNA).

long management" (internal quotation marks omitted)). Because Special Condition 4 addresses Blinkinsop's conduct, promotes his rehabilitation, and protects the public, it generally does not appear overbroad in achieving these results. *See Bee*, 162 F.3d at 1236 (recognizing that "even very broad conditions are reasonable if they are intended to promote the probationer's rehabilitation and to protect the public").

**[12]** Blinkinsop has failed to show that Special Condition 4, a standard prohibition in child-pornography cases, is a greater deprivation on his liberty than required to achieve deterrence, public protection, and rehabilitation, as a general matter. *See Daniels*, 541 F.3d at 928. He has argued specifically on appeal, however, that this condition of his supervised release is overbroad in that it prevents him from attending school events in which his own children are participants. *Cf. United States v. Kerr*, 472 F.3d 517, 523 (8th Cir. 2006) (noting that, "because [a convicted possessor and distributor of child pornography, prohibited access on supervised release to children] is childless, he is not restricted from contacting his own children"). Although the sentencing judge recognized that Blinkinsop "has two young children," he did not address this aspect of Special Condition 4 at the sentencing proceeding, and the record otherwise gives us no indication that Blinkinsop's being able to attend school events involving his children was considered in formulating this supervised-release special condition. Sentencing Transcript at 6. We note with approval that such a special condition can be tailored so that some access to a defendant convicted of a child-pornography crime may be allowed by requiring written permission from the probation officer, after consulting with treatment provider(s), to attend school events at which the offender's children are involved. *See, e.g.*, *United States v. Stults*, 575 F.3d 834, 850 (8th Cir. 2009) (finding reasonable special supervised-release conditions for defendant convicted of possessing child pornography that prohibited him from "having contact or residing with children under the age of 18, *including his own children, unless approved in advance and in writ-*

*ing by the probation officer in consultation with the treatment providers*," and "accessing or coming within 500 feet of schools, school yards, parks, arcades, playgrounds, amusement parks, or other places used primarily by children under the age of 18 *unless approved in advance and in writing by the probation officer*" (emphases added)), *cert. denied*, 130 S. Ct. 1309 (2010). The probation officer, who has regular contact with a sex offender on supervised release, in consultation with treatment provider(s), is in the best position to determine the appropriate contact with minors for a released defendant convicted of a child-pornography crime, even with the defendant's children. In fashioning an appropriate supervised-release special condition concerning contact with minors, even with the children of a defendant convicted of a child-pornography crime, the sentencing judge considers the triple goals of supervised release of rehabilitation, deterrence, and public protection—and children are members of the public, who must be protected. *See id.* at 850. While these supervised-release goals remain constant, the release progress of individual convicted, child-pornography defendants and the circumstances of each case will vary, which places the probation officer, rather than the sentencing judge, in a position to monitor a special condition of release involving access to children by a released convicted defendant of a child-pornography crime. *See Kerr*, 472 F.3d at 523 (concluding that there was no plain error because the sentencing judge "considered the possibility of revisiting these conditions [supervised-release restrictions as to contact with children] at a later date"). School events that involve Blinkinsop's children also will include other minors, and a probation officer monitoring Blinkinsop's progress on supervised release will know when it is appropriate for him to attend various school events where these minors are present.[12]

---

[12]In reconsidering Special Condition 4, regarding Blinkinsop's argument that it prevents him from attending school events involving his children, the district judge should consider the applicability of this special condition, in view of Blinkinsop's 8-year imprisonment term and the fact

**[13]** Therefore, we vacate supervised-release Special Condition 4 for the district judge to reconsider on limited remand. Recognizing that the district judge must protect the public, including other children, the judge specifically should address Blinkinsop's argument concerning attending school events involving his children and determine if Special Condition 4 should be tailored to provide for this contingency as well as to have written permission of his probation officer prior to each such attendance.[13] Notably, the special conditions of Blinkinsop's supervised release are for only 5 years and not for the rest of his life. We leave to the district judge on remand the factual determination concerning whether Special Condition 4, regarding Blinkinsop's proximity to places frequented by children during his 5-year term of supervised release, is overbroad in view of his conviction for receiving a considerable amount of child pornography yet desiring to attend school events involving his children and whether it can be revised to accommodate Blinkinsop, while complying with the goals of supervised release.

---

that his children were 8 and 5, when his PSR was prepared in 2009. Other relevant factors include the custodial circumstances of Blinkinsop's children and their geographic location. We do not preclude the district judge's maintaining Special Condition 4, if the judge decides that it is necessary for the shortest statutory time for supervised release, 5 years as opposed to life, for a defendant convicted of a child-pornography crime. We do suggest that the written permission of Blinkinsop's probation officer, after consultation with *any* treatment providers, is an appropriate monitoring of Blinkinsop's progress on supervised release relative to Special Condition 4.

[13]We note that Special Conditions 3 and 5, relating respectively to residing or being "in the company of any child under the age of 18" or socializing "with anybody who has children under the age of 18," require prior approval or "permission of the probation office." Judgment at 4.

B.  *Possession of a Camera Phone or Device for Covert Photography*

Special Condition 7 provides: "Defendant shall not possess camera phones or electronic devices that could be used for covert photography." Judgment at 4 (Special Conditions of Supervision). In opposing Special Condition 7, Blinkinsop argues that this condition is "over broad, vague, and unjustified," because "photography played no role in his offense," and there is no need to prohibit him from "using or possessing this new technology." Appellant's Br. at 32. Conditions of supervised release are not required to be "related to the offense of conviction"; instead, they *can anticipate* crimes that a defendant convicted of a child-pornography crime might commit in the future. *Wise*, 391 F.3d at 1031. The Eighth Circuit has held that a supervised-release restriction on "use of photographic equipment, including cameras," did not deprive the defendant convicted of a child-pornography crime "of a greater liberty interest than is reasonably necessary" under plain-error review. *United States v. Ristine*, 335 F.3d 692, 696 (8th Cir. 2003).[14] "Although there was no evidence in the record that Ristine photographed any minors, he possessed thousands of photos of underage women," making it "reasonable to believe that Ristine likely would photograph underage women and would exchange those photographs with other Internet users." *Id.*; *see United States v. Paul*, 274 F.3d 155, 170, 171 (5th Cir. 2001) (affirming supervised-release condition restricting "access to photographic and audio/video equipment [ ]as necessary to protect the public," which prevented the convicted defendant, who pled guilty to possessing "photographs of naked children, including some children that were identified as being local neighborhood children" from his "hobbies" of "photography and repairing cameras" as

---

[14]More inclusive and restrictive than Blinkinsop's Special Condition 7 was the special condition in *Ristine*, which prohibited this defendant convicted of a child-pornography crime "from owning or operating any photographic equipment including, but not limited to, cameras, digital cameras, video-taping recorder, camcorders, computers, scanners, and printers." 335 F.3d at 695.

"necessary to protect the public and to prevent Paul from committing future criminal conduct").

**[14]** The large number of images stored on Blinkinsop's computer and storage equipment make it reasonable to anticipate that, even if he has not engaged in covert photography yet, he might do so in the future. Condition 7 does not impose any significant deprivation on Blinkinsop's liberty; it requires only that he not possess a camera phone or other device for covert photography. He may have a cell phone, as long as it does not have a camera module, and he can have a camera, as long as it is readily identifiable as a camera. The minor incursion on Blinkinsop's liberty by this condition is not greater than is reasonably necessary to protect the public and to promote Blinkinsop's rehabilitation. The district judge did not plainly err by imposing Special Condition 7 during Blinkinsop's 5-year, supervised-release term.

C. *Ban on Possessing a Computer or Device Capable of Accessing the Internet*

**[15]** Special Condition 13 provides: "Defendant shall not possess or use any computer or other electronic device which can provide access to the Internet." Judgment at 4 (Special Conditions of Supervision). Blinkinsop's challenge to this special-condition prohibition is reviewed for plain error, since Blinkinsop did not object at sentencing, *Jeremiah*, 493 F.3d at 1046. As the government concedes, banning Blinkinsop's Internet usage contravenes *United States v. Riley*, 576 F.3d 1046, 1050 (9th Cir. 2009). Therefore, Special Condition 13 must be amended or deleted on limited remand.

## CONCLUSION

As we have explained, we AFFIRM in part Blinkinsop's sentence as to his term of imprisonment and supervised-release Special Condition 7. We VACATE Blinkinsop's sentence as to supervised-release Special Conditions 4 and 13

and order a LIMITED REMAND for reconsideration consistent with this opinion.

**AFFIRMED** in part; **VACATED** and **REMANDED** in part.