FILED
United States Court of Appeals
Tenth Circuit

November 13, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JEFFERY DEWAYNE MORRISON,
SR., a/k/a Jeffery Dewayne Morrison,
a/k/a Jeffrey Dewayne Morrison,

      Defendant - Appellant.

No. 13-7051

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:12-CR-00039-RAW-1)**

Carl Folsom III, Assistant Federal Public Defender (Julia L. O'Connell, Federal
Public Defender; and Robert Ridenour, Assistant Federal Public Defender, with
him on the briefs), Eastern District of Oklahoma, Muskogee, Oklahoma, for
Defendant-Appellant.

Douglas Edward Snow, Assistant United States Attorney (Mark F. Green, United
States Attorney; and Linda A. Epperley, Assistant United States Attorney, with
him on the brief), Eastern District of Oklahoma, Muskogee, Oklahoma, for
Plaintiff-Appellee.

Before **GORSUCH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Jeffery Dewayne Morrison, Sr., pled guilty to one count of possession of certain material involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) and was sentenced to 120 months. He appeals his sentence, arguing that it is procedurally unreasonable. He further claims the district court erred by imposing special conditions of supervised release, including a ban on the use of a camera and the internet. We affirm.

I

In November 2010, law enforcement agents started investigating Mr. Morrison when he emailed files containing child pornography to an undercover agent. In March 2011, after confirming Mr. Morrison's identity, local law enforcement executed a search warrant at his residence in Poteau, Oklahoma. Mr. Morrison consented to a search of both his laptop and desktop computers and then admitted to regularly downloading child pornography and saving it on his computers. Through forensic analysis, the FBI subsequently discovered over 20,000 images depicting child pornography on Mr. Morrison's computers, including images of children between five and fourteen depicting actual penetration of children by adults and 53 previously identified victims.

In July 2012, a grand jury in the Eastern District of Oklahoma indicted Mr. Morrison on two counts: possession of material involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2), and distribution

of similar material in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1).

Mr. Morrison filed a motion for a competency hearing, and he was determined competent to stand trial after a psychological evaluation and a hearing. He then entered a guilty plea to count one.

The Presentence Investigative Report (PSR) calculated Mr. Morrison's total offense level at 30.[1] Under U.S.S.G. § 2G2.2, he received a base offense level of 18 and the following enhancements: a two-level increase pursuant to § 2G2.2(b)(2) for possession of material involving a prepubescent minor; a two-level increase pursuant to § 2G2.2(b)(3)(F) for distribution of child pornography to an undercover law enforcement agent; a four-level increase pursuant to § 2G2.2(b)(4) for possession of sadistic images or masochistic depictions; a two-level increase pursuant to § 2G2.2(b)(6) for use of a computer; and a five-level increase pursuant to § 2G2.2(b)(7)(D) for the quantity of images possessed. He also received a three-level reduction for his plea and acceptance of responsibility pursuant to §§ 3E1.1(a) and (b).

Based on his prior convictions, Mr. Morrison's criminal history score placed him in Category III, resulting in a recommended Guidelines range of 121 to 151 months. However, because the statutory maximum sentence of 120 months, 18 U.S.C. § 2252(b)(2), is less than the Guideline range, under

---

[1] The PSR applied the 2012 edition of the United States Sentencing Commission Guidelines Manual, and all references to the Guidelines herein refer to the 2012 edition unless otherwise indicated.

§ 5G1.1(a) the statutory maximum of 120 months became the Guideline term of imprisonment.

Mr. Morrison did not object to the PSR but did file a motion for a downward departure and/or variance based on his age, infirmity, and military service. He also contended the child pornography Guidelines are unreasonable, noting that federal courts, the Sentencing Commission, and the Department of Justice (DOJ) have all expressed concerns regarding § 2G2.2. Mr. Morrison explicitly requested the district court to remove the § 2G2.2(b)(6) two-level enhancement for use of a computer, pointing out the DOJ recommended in a letter to the Sentencing Commission in March 2013 that this enhancement should be eliminated. The government opposed the motion.

At sentencing, the district court accepted the PSR as the factual basis for the sentence and heard argument on the motion. Mr. Morrison focused on the two-level enhancement for the use of a computer, arguing that all child pornography is obtained through the use of a computer and therefore there is no good penal or policy rationale supporting the enhancement. The court responded that "there is a growing idea, but I don't think it has morphed into a consensus yet. And I don't think the particular adjustment for use of a computer is so disparate, so overly penal that I feel like it is something that needs judicial check, yet." Rec., vol. II at 41. The court specifically recognized its authority to depart or vary from the sentencing range, but ultimately denied the variance. After

counsel asked for specific clarification regarding the court's reasons for the denial, the court reiterated its understanding that the Guidelines are advisory but stated that it was denying the variance because of a "combination of factors" and because "use of the computer does facilitate distribution and the ability to have so many photographs or images." *Id.* at 67.

The court sentenced Mr. Morrison to 120 months, to be followed by five years of supervised release. It also imposed two special conditions of supervised release relevant to this appeal, prohibiting Mr. Morrison, without prior written approval from his probation officer, from "possess[ing] or us[ing] a computer with access to any on-line computer service at any location (including place of employment)" or from "own[ing] or possess[ing] any type of camera, photographic device and/or equipment, including video recording equipment." *Id.* at 69-70. Mr. Morrison objected only to the special condition banning his use of a camera.

## II

On appeal, Mr. Morrison first challenges his 120-month sentence as procedurally unreasonable, arguing that the district court erred by failing to "properly examine a policy disagreement with the child pornography guidelines." Aplt. Br. at 10. He further contends the court erred by applying "an overly rigid test" and "extreme deference" to the two-level enhancement under § 2G2.2(b)(6) for use of a computer because it was congressionally imposed and not based on

"empirical data and national experience." Aplt. Br. at 11-14.

We review Mr. Morrison's sentence for reasonableness, applying a deferential "abuse-of-discretion standard of review." *Gall v. United States*, 552 U.S. 38, 46 (2007). "Reasonableness has a procedural and substantive component." *United States v. Lopez-Macias*, 661 F.3d 485, 489 (10th Cir. 2011) (internal quotation marks omitted). Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain the chosen sentence." *Gall*, 552 U.S. at 51. Assuming "the district court's sentencing decision is procedurally sound," a court "should then consider the substantive reasonableness of the sentence," taking "into account the totality of circumstances" and "the extent of any variance from the Guidelines range." *Id.* Moreover, where, as here, the "sentence is within the Guidelines range," we may "apply a presumption of reasonableness." *Id.*

Mr. Morrison relies primarily on *Kimbrough v. United States*, 552 U.S. 85 (2007), and *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011), claiming the district court erred because it could have disregarded the Guidelines but instead applied "an undue level of deference upon sentencing enhancements that had not been empirically derived by the Sentencing Commission." Aplt. Br. at 13.

In *Kimbrough*, 552 U.S. at 91, the Supreme Court focused its discussion primarily on whether district courts have authority to consider the disparity between the Sentencing Guidelines' treatment of crack and powder cocaine offenses when deciding a sentence. The Court emphasized the importance of the Sentencing Commission, explaining "[i]t has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted). The Court held that although the Guidelines usually "reflect of rough approximation of sentences that might achieve § 3553(a)'s objectives," sentencing courts may vary from the crack cocaine Guidelines because "those Guidelines do not exemplify the Commission's exercise of its characteristic institutional role." *Id.* at 109. This is so because the Commission "did not take account of empirical data and national experience" when it formulated the Guideline ranges for crack cocaine offenses, but instead it based the Guideline on the mandatory minimum sentence for crack cocaine set by Congress. *Id.* (internal quotation marks omitted). Accordingly, "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.* at 110. More specifically, the Court expressed approval of the district court's downward departure of 4.5 years because the court "properly homed in on the particular circumstances of

-7-

Kimbrough's case and accorded weight to the Sentencing Commission's consistent and emphatic position that the crack/powder disparity is at odds with § 3553(a)." *Id.* at 111.

In *United States v. Spears*, 555 U.S. 261, 264 (2009), the Court reiterated that "with respect to the crack cocaine Guidelines, a categorical disagreement with and variance from the Guidelines is not suspect." It noted "[t]hat was indeed the point of *Kimbrough*: a recognition of district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Id.* Significantly, the Court did not hold in *Kimbrough* or *Spears* that a district court *must* deviate from a properly calculated Guideline range in the face of policy opposition from the Sentencing Commission, but only that it *may* deviate.

The Ninth Circuit held in *Henderson*, 649 F.3d at 963, "that similar to the crack cocaine Guidelines, district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." But the court emphasized that "district courts *are not obligated to vary from* the child pornography Guidelines on policy grounds if they do not have, in fact, a policy disagreement with them." *Henderson*, 649 F.3d at 964 (emphasis added); *see also United States v. Grober*, 624 F.3d 592, 609 (3d

Cir. 2010) ("[I]f a district court does not in fact have a policy disagreement with § 2G2.2, it is not obligated to vary on this basis.").

The district court thus had broad discretion to disregard the policy argument Mr. Morrison advanced at sentencing. Mr. Morrison provides no authority for his assertion that the court erred by applying "extreme deference" to a properly calculated sentence under the Guidelines. The court considered Mr. Morrison's policy objections at sentencing, and although brief, the court gave a sufficient explanation for rejecting them. *See Rita v. United States*, 551 U.S. 338, 356-57 (2007) (noting sentencing judge must state his or her reasons for a sentence but the "appropriateness of brevity or length . . . depends upon circumstances"). Moreover, the court offered a thorough explanation for why it believed the 120-month sentence was reasonable in light of all of the objectives set forth in 18 U.S.C. § 3553(a). Thus, we cannot say the 120-month sentence is procedurally unreasonable.

### III

Mr. Morrison also challenges the special conditions of supervised release imposed by the district court banning his use of a computer and a camera unless he obtains prior permission from his parole officer.[2]

---

[2] Mr. Morrison challenges the constitutionality of the special conditions, contending that the delegation of authority to the probation officer to determine when and under what circumstances he might be able to use a computer or camera violates Article III and is an impermissible delegation of judicial power. But Mr. Morrison did not raise this argument below and failed to develop it in his opening

Pursuant to 18 U.S.C. § 3583(d), "[d]istrict courts have broad discretion to prescribe conditions on supervised release." *United States v. Wayne*, 591 F.3d 1326, 1331 (10th Cir. 2010). Section 3583(d), when read in conjunction with 18 U.S.C. § 3553(a), provides that a court may order special conditions of supervised release as long as the conditions are "reasonably related" to "the nature and circumstances of the offense and the history and characteristics of the defendant," and the need "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." In addition, a special condition of supervised release must involve "no greater deprivation of liberty than is reasonably necessary for" deterring criminal activity, protecting the public, and promoting a defendant's rehabilitation. *See* § 3583(d)(2); §§ 3553(a)(2)(B)-(D); *see also Wayne*, 591 F.3d at 1332. Finally, special conditions of supervised release must be "consistent with any pertinent policy statements issued by the Sentencing Commission." § 3583(d)(2)(3).

### A. Special Condition Three: Internet Ban

Mr. Morrison acknowledges he did not object to this special condition of

---

brief. The argument is therefore not properly before us, and we decline to address it. *See United States v. Denogean*, 79 F.3d 1010, 1012 (10th Cir. 1996) ("The general rule is that we do not consider arguments raised for the first time on appeal."); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (noting issues not addressed in opening brief are deemed waived).

supervised release at sentencing, asserting that our standard of review is therefore

plain error. *United States v. Rosales-Miranda*, 755 F.3d 1253, 1257 (10th Cir.

2014) (noting forfeiture "triggers plain-error review"). The government contends

we should not review this issue even for plain error because, it asserts, Mr.

Morrison invited the alleged error by arguing that a ban on the use of a computer

would justify the court giving him a lesser sentence. We are not persuaded Mr.

Morrison's argument invited the error he alleges here.

"The invited-error doctrine prevents a party who induces an erroneous

ruling from being able to have it set aside on appeal." *United States v. DeBerry*,

430 F.3d 1294, 1302 (10th Cir. 2005) (internal quotation marks omitted). In

*DeBerry*, we explained:

> [T]he doctrine of invited error is based on reliance interests similar
> to those that support the doctrines of equitable and promissory
> estoppel. Having induced the court to rely on a particular erroneous
> proposition of law or fact, a party may not at a later state use the
> error to set aside the immediate consequences of the error.

*Id.* (internal quotation marks and ellipses omitted).

In support of his motion for a variance and/or a departure at the beginning

of the sentencing hearing, Mr. Morrison argued that imposing a ban on computers

as a special condition for supervised release would justify a reduced sentence. He

asserted:

> There is no apparent prior conviction or behavior related to either sex
> crimes or child molestation at all. If you are wanting to ensure the
> protection of the public . . . what is the best way to do it . . . *you are*

-11-

*going to impose rules when we are done with this for supervised release and you will impose rules that say no computers, no internet access, no means of photography, no cameras.* Those are rules which will serve to deter . . . We have probation officers that can make sure there is no computer in that house. And if my crime is using a computer to get kiddy porn, then what better thing to do than to make sure you can't have a computer. . . . Why is the guideline sentence not appropriate in this situation? It is because reasonable rules can be imposed for supervised release that will protect the public . . . – any more time, if it is not tied to a legitimate purpose, is just punishment for punishment sake.

Rec., vol. II at 45-46 (emphasis added). But counsel for Mr. Morrison was merely recognizing that the district court was already planning to impose a ban on internet use (which counsel knew from prior experience) and contending that a lesser sentence was therefore warranted because the computer ban would serve to deter Mr. Morrison and protect the public from future child pornography crimes. Counsel's argument thus did not *induce* the district court to do anything it would not otherwise have done. Accordingly, this does not appear to be a situation in which counsel invited what he now claims was error.

Nonetheless, the sequence of events at sentencing shows that Mr. Morrison waived this issue. *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272-73 (10th Cir. 2007) (noting "an abandoned objection is waived"). At the end of the sentencing hearing, when the district court imposed the sentence and conditions of supervised release, the court stated: "I know regarding the conditions of supervised release that there are some of those that [Mr. Morrison's counsel] will express concerns and objections to, *specifically regarding the use of phones or*

*computers*." Rec., vol. II at 74 (emphasis added). Immediately thereafter, counsel objected to the special condition banning the use of a camera but he made no objection to special condition three banning the use of a computer.

It is apparent that Mr. Morrison did not merely forget to object to this condition of supervised release. Rather, he deliberately thought about the argument, used it to argue in favor of a lesser sentence, and then chose not to object to it at the end of sentencing even after the court stated it believed Mr. Morrison would object. Although forfeiture, "the failure to make the timely assertion of a right," may be reviewed on appeal for plain error, "waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). We have previously said that "[t]here can be no clearer intentional relinquishment or abandonment of a known right than when the court brings the defendant's prior objection to his attention, asks whether it has been resolved, and the defendant affirmatively indicates that it has." *Carrasco-Salazar*, 494 F.3d at 1273 (internal quotation marks and citation omitted); *cf. United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1185 (10th Cir. 2009) ("[Defendant's] intentional litigation conduct . . . [was] tantamount to the classic waiver situation where a party actually identified the issue, deliberately considered it, and then affirmatively acted in a manner that abandoned any claim on the issue.") (quotation marks and citation omitted). Similarly, we conclude that Mr. Morrison's failure to object after the

-13-

district court brought the specific objection to his attention amounted to an intentional abandonment of the issue.[3]

### B. Special Condition 4: Camera Ban

Mr. Morrison objected to this condition at sentencing. He argued, as he does on appeal, that the ban on the use of a camera is not reasonably related to his offense conduct, criminal history, or his characteristics. "When the defendant objects to a special condition of supervised release at the time it is announced, this Court reviews for abuse of discretion." *United States v. Mike*, 632 F.3d 686, 691 (10th Cir. 2011).

We are not persuaded the district court abused its discretion in imposing the camera ban. While it is true that Mr. Morrison did not use a camera in committing his offense, the Fifth Circuit upheld an almost identical condition of supervised release in *United States v. Miller*, 665 F.3d 114, 134 (5th Cir. 2011), even though the defendant had not used a camera in committing a child pornography offense. In *United States v. Blinkinsop*, 606 F.3d 1110, 1122-23 (9th Cir. 2010), the Ninth Circuit upheld a special condition of supervised release banning possession of "camera phones or other electronic devices that could be

---

[3] Even if we were to consider the objection as forfeited, we see no error, plain or otherwise. The Sentencing Guidelines recommend that courts impose this special condition of supervised release in these circumstances. U.S.S.G. § 5D1.3(d)(7)(B). We upheld an identical special condition of supervised release under plain-error review in *United States v. Walser*, 275 F.3d 981, 987-88 (10th Cir. 2001).

-14-

used for covert photography" despite the fact that a camera played no role in the defendant's conviction for receiving child pornography. The court reasoned that "[t]he large number of images stored on Blinkinsop's computer and storage equipment make it reasonable to anticipate that, even if he has not engaged in covert photography yet, he might do so in the future." *Id.* at 1123. It concluded accordingly that "the minor incursion on Blinkinsop's liberty by this condition is not greater than is reasonably necessary to protect the public and to promote Blinkinsop's rehabilitation." *Id. See also United States v. Ristine*, 335 F.3d 692, 696 (8th Cir. 2003) (upholding camera ban even though no evidence the defendant used a camera in committing the offense). Here, the fact that Mr. Morrison possessed over 20,000 images of child pornography makes it reasonable to believe that he might use a camera in the future for such purposes.

Mr. Morrison contends the "outright prohibition of the ownership of a camera involves a greater deprivation of liberty than is reasonably necessary" to achieve the goals of supervised release. Aplt. Br. at 20. Significantly, however, this special condition does not completely ban Mr. Morrison from using a camera because he may do so with permission from his probation officer. *See United States v. Koch*, 625 F.3d 470, 481 (8th Cir. 2010) (upholding identical ban on use of camera and explaining defendant was "not completely barred from possessing a camera . . . , for he may apply to the probation office for exceptions when needed"); *United States v. Fields*, 324 F.3d 1025, 1026-27 (8th Cir. 2003)

-15-

(finding conditions banning internet use and "using computers as photographic equipment" subject to permission of probation officer not "greater deprivation of liberty than is reasonably necessary").

We recognized in *Walser*, 275 F.3d at 988, that a special condition banning internet use subject to approval of the probation office accomplished the "goal" of restricting internet use while "delicately balance[ing] the protection of the public with the goals of sentencing." Similarly, in *Miller*, 665 F.3d at 133-34, the court assumed "the Probation Office will reasonably exercise its discretion by permitting [the defendant] to use the Internet when, and to the extent, the prohibition no longer serves the purposes of supervised release." Here, the district court responded to Mr. Morrison's objection by stating that "the court will in this case and other cases continue to make the admonition and recommendation to the U.S. Probation Office to alleviate the concerns or problems caused by that condition." Rec., vol. II at 75. We are satisfied that a ban on cameras subject to the probation officer's permission is not a greater deprivation of Mr. Morrison's liberty than necessary.

A sentencing court has broad discretion in fashioning special conditions of supervised release. *Mike*, 632 F.3d at 692; *Wayne*, 591 F.3d at 1331. Given the deferential abuse of discretion standard, we cannot say the district court abused its discretion in banning Mr. Morrison's use of a camera without the approval of his probation officer.

-16-

IV

In sum, we AFFIRM the district court's decision to deny Mr. Morrison's motion for a departure and/or variance and to impose special conditions of supervised release banning Mr. Morrison's use of the internet or a camera without approval of the probation officer.