FILED
United States Court of Appeals
Tenth Circuit

August 3, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

ANDY NGHIEM,

        Defendant – Appellant.

No. 10-3300
(D.C. No. 6:10–CR–10069–MLB–1)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **HOLLOWAY** and **PORFILIO**, Senior
Circuit Judges.

---

After the United States District Court for the District of Kansas rejected his

plea agreement, Defendant Andy Nghiem persisted in his plea of guilty to

distribution of child pornography. The district court sentenced him to 121

months' imprisonment, the bottom of the advisory guidelines range. On appeal he

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

challenges the substantive reasonableness of his sentence, and also raises three unpreserved challenges to its procedural reasonableness. We affirm.

## II. Background

In September 2008 the German National Police (Bunderskriminalamt, or BKA) Child Porn Unit identified an Internet Protocol (IP) address that was sharing a child-pornography movie. The IP address belonged to Defendant. The BKA referred this information to the Bureau of Immigration and Customs Enforcement (ICE) Cyber Crimes Center, and a local ICE office in Wichita obtained and executed a federal search warrant for Defendant's residence.

The agents seized four computers and six hard drives not installed on a computer. Defendant consented to an interview at the time of the search and told agents that (1) he was the primary user of three computers found in his bedroom and (2) he utilized peer-to-peer networks and file-sharing programs to download pornographic images and videos for his personal use, not to be traded or shared. When asked whether a search of his hard drives would reveal images or videos of people under the age of 18, Defendant stated, "You might find some." R. Vol. III at 9. And when agents inquired whether any of the images or videos would be sexual in nature, he responded affirmatively.

Forensic analysis of the seized devices revealed 405 images and 107 video files of child pornography. The images and videos depicted girls between the ages of 5 and 12 years old engaging in sexual intercourse, oral sex, masturbation,

and graphic displays of their genitalia. Some videos also depicted child bondage. Defendant had sorted the files into various descriptive folders and had accessed many of them as recently as the day before the search warrant's execution.

In April 2010 Defendant was indicted on charges of distribution of child pornography, *see* 18 U.S.C. § 2252(a)(2), and possession of child pornography, *see id*. § 2252(a)(4)(B). On July 19, 2010, he entered a plea of guilty to distribution of child pornography under a Fed. R. Crim. P. 11(c)(1)(C) plea agreement, which set a sentence of 97 months' imprisonment. The Probation Office then submitted a presentence investigation report (PSR) that calculated the advisory guideline range to be 121 to 151 months' imprisonment, based on Defendant's total offense level of 32 and a criminal-history category of I. After reviewing the PSR, the district court rejected the plea agreement, finding that it would lead to unwarranted sentencing disparities among defendants who have been convicted of similar conduct. Defendant decided to persist in his guilty plea, and the court sentenced him to 121 months, the low end of the applicable guideline range. Defendant timely appealed.

## III. Discussion

In *United States v. Booker*, 543 U.S. 220, 261 (2005), the Supreme Court directed federal appellate courts to review criminal sentences for reasonableness. "Reasonableness review is a two-step process comprising a procedural and a substantive component." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208,

1214 (10th Cir. 2008) (internal quotation marks omitted).  To say that the district court acted reasonably—either procedurally or substantively—is to say that it did not abuse its discretion.  *See id.*  A sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  "Substantive reasonableness, on the other hand, involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in § 3553(a)."  *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (alteration and internal quotation marks omitted).  A sentence imposed within a properly calculated guidelines range is presumptively reasonable.  *See United States v. Lewis*, 594 F.3d 1270, 1277 (10th Cir. 2010).  The defendant may rebut the presumption "by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)."  *Id.* (internal quotation marks omitted).

A.  Substantive Reasonableness

Defendant contends that his sentence is substantively unreasonable "because it is greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)."  Aplt. Br. at 16.  He acknowledges that the 121-

month sentence is within the properly calculated guideline range and therefore is afforded a rebuttable presumption of reasonableness. But he attempts to rebut that presumption by arguing that there are serious flaws in USSG § 2G2.2, the guideline that applies to distribution of child pornography. *See United States v. Dorvee*, 616 F.3d 174, 184–88 (2d Cir. 2010) (criticizing the severity of § 2G2.2). His chief point is that the guideline "was driven by Congressional directives," and was not "a product of the Sentencing Commission's particular expertise in analyzing the empirical data and national experience in sentencing issues." Aplt. Br. at 16.

Defendant may be correct that "[m]any courts are now questioning the soundness of" § 2G2.2. Aplt. Br. at 21–22. That does not mean, however, that a within-guideline sentence based in part on a sentencing guideline lacking an empirical basis is necessarily unreasonable. Guidelines levels can properly follow Congressional policy regarding the severity of punishment appropriate for particular offenses, and that policy need not be founded on scientific data. *See United States v. Alvarez-Bernabe*, 626 F.3d 1161, 1165–66 (10th Cir. 2010). To be sure, district courts that disagree with § 2G2.2 may vary from the guidelines to adjust for what they perceive as its shortcomings. "But if they do not, we will not second-guess their decisions under a more lenient standard simply because the . . . Guideline is not empirically-based." *United States v. Mondragon-Santiago*, 564 F.3d 357, 367 (5th Cir. 2009); *see United States v. Lopez-Reyes*, 589 F.3d 667,

671 (3d Cir. 2009) ("[A] district court is not required to engage in 'independent analysis' of the empirical justifications and deliberative undertakings that led to a particular Guideline."). Even if a lesser sentence may have been reasonable in this case, so may a greater sentence. There will almost always be a range of reasonable sentences. "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall v. United States*, 552 U.S. 38, 51 (2007). We cannot say that Defendant has overcome the presumption that his within-guideline sentence fell within the realm of rationally available sentences.

B.  Procedural Reasonableness

Couched within the substantive-reasonableness argument in his opening brief on appeal, Defendant argues that the district court "abused its discretion when it based the sentence on [his] possession and collection of adult pornography, the mistaken conclusion that [he] had been continuously involved with child pornography for over eight years and that he had violated the conditions of his pretrial release." Aplt. Br. at 16. These arguments, which allege that the court made factual errors and base the sentence on an impermissible factor, should have been characterized as challenges to the procedural reasonableness of his sentence. *See Gall*, 552 U.S. at 51 (a defendant's claim that the district court "select[ed] a sentence based on clearly erroneous facts" is a challenge to procedural reasonableness); *United States v.*

*Smart,* 518 F.3d 800, 803-04 (10th Cir. 2008) (giving significant weight to improper factor is procedural error). We will therefore treat them as such. But because Defendant failed to object to these alleged violations at the sentencing hearing, we can reverse only if these alleged errors rose to the level of plain error. *See United States v. Robertson*, 568 F.3d 1203, 1210 (10th Cir. 2009). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Caraway*, 534 F.3d 1290, 1298 (10th Cir. 2008) (internal quotations marks omitted). "The defendant has the burden of establishing all four elements of plain error." *United States v. Hall*, 625 F.3d 673, 684 (10th Cir. 2010).

Defendant's first claim is that "[t]he district court's conclusions about the duration of [Defendant's] criminal conduct and that he had [been] continuously involved with child pornography from 2001 until the execution of the search warrant in February, 2009, conflict with the record." Aplt. Br. at 34. He points to the following statement by the court at sentencing:

> [T]his man's history of possession of pornography. At least since 2001. And some of that, obviously, had to be child pornography.
>     So, while I agree that he's got a clean record otherwise, that he's apparently been good to his family and has been a good worker; the other side of that is that he has engaged for quite sometime in a crime that is the kind of crime that people hide, you know.

R. Vol. II at 21.  Defendant asserts that the court's characterization was inaccurate because "the record is devoid of any evidence that [he] was involved with the downloading or possession of child pornography between 2001 and the commencement of the current offense in July, 2008."  Aplt. Br. at 35.

We disagree.  The district court committed no error by stating that Defendant's history with child pornography dated back to 2001.  Before sentencing, Defendant underwent a forensic psychological evaluation "to assess [his] psychological functioning and risk of sexual recidivism, to appraise his suitability for community supervision, and to provide treatment and management recommendations."  R. Vol. III at 57.  It appears that during the evaluation he admitted to looking at images of adolescent females in 2001.  The psychologist's report states:

> Consistent with information from discovery materials, Mr. Nghiem reported that he was the subject of an investigation into his activities on the Internet in 2001.  He learned about that investigation during the investigation into his current alleged offenses.  Mr. Nghiem stated that for several days in 2001 he set up and maintained a file serve for erotic materials.  He indicated that, during that general period, he viewed erotic materials of female adolescents.  He closed this file serve after other people violated rules of the file serve.  He explained, "Better for me to control what I could download rather than what people could send to me."

R. Vol. III at 60.  And Defendant also told the psychologist that "he has regularly viewed erotic materials since he was 20 years old" and that these materials, although primarily images and videos of adults, "also have involved teenagers and

children." *Id.* at 59. Thus, this claim does not survive the first step of plain-error review—there was no error.

Defendant next contends that "[d]uring its discussion of [his] personal characteristics, the court also commented multiple times on [his] possession of legal pornography." Aplt. Br. at 35. These statements, Defendant claims, demonstrate that the court improperly "considered [his] legal, First Amendment protected activity as apparently aggravating 'circumstances of the offense' of conviction." *Id.* (footnote omitted). In our view, Defendant misconstrues the court's statements. The first statement referenced by Defendant came after the court noted that family members and coworkers had submitted numerous letters of support on Defendant's behalf extolling his positive virtues. The court questioned, however, how much the people who had written the letters knew about Defendant's interest in pornography, stating:

> I have no doubt that Mr. Nghiem has been a good employee and a good friend and a good family member. But I didn't see anything in any of these letters . . . that said that any of these people were aware that Mr. Nghiem has, and has had apparently since 2001 . . . an abiding interest in pornography. Having collected hundreds and thousands of images of pornography. I didn't see that in any of this material.

R. Vol. II at 17–18. As we understand the court's comments, they merely reflect that it thought that the authors of the letters may not have written such positive things about Defendant had they known of his long-term interest in pornography. Questioning how much weight to give such letters is not akin to concluding that

-9-

possession of legal pornography is an aggravating factor at sentencing. If the court erred, the error was not—as required by the second stop of plain-error analysis—an obvious one.

The other statement that Defendant points to was the district court's response to a "suggestion in some of the letters . . . that Mr. Nghiem won't reoffend." R. Vol. II at 24. The court said that Defendant "is 30 years old and he's been engaged at least since he was 20 in accessing pornography." *Id*. In light of the psychologist's report indicating that Defendant's access to pornography had regularly included child pornography, we conclude that it is far from obvious that the court considered Defendant's involvement with legal pornography as an aggravating factor in sentencing.

Finally, Defendant argues that the court abused its discretion by basing his 121-month sentence, in part, on the erroneous conclusion that he "had 'reoffended' by violating the conditions of his [presentence] release" when he used a computer the night before the sentencing hearing. Aplt. Br. at 37. The relevant background is as follows: Shortly after Defendant was arrested and indicted, a magistrate judge released him on a $50,000 unsecured bond, with special conditions that restricted his use of computers. As Defendant points out, none of the conditions "impose[d] an outright prohibition on using a computer or

working on a computer." Aplt. Br. at 38.[1]  At the sentencing hearing, however, the district court concluded that Defendant had "reoffended" the night before by working on a computer.  Responding to the suggestion that Defendant posed a low risk of recidivism, the court stated:

> And in the terms of reoffending or whatever, he was told that one of the conditions of his release pending trial was that he was not to work on computers.  Probation went out last night and he was working on a computer.  He says it belonged to a 14 year old nephew.  But the point is that he was told he couldn't do any of that and he did.  Which suggest to me that he hasn't learned his lesson.  And that suggests to me that—well, he's going to have to learn it somewhere because he can't continue to do this when he's released from the penitentiary.

R. Vol. II at 24.  Because the conditions of Defendant's presentence release did not prohibit his use of computers, the court erred by considering the alleged "reoffense" in its sentencing decision.

We affirm the sentence, however, because Defendant has failed to establish the third requirement for plain-error reversal—prejudice.  He has not pointed to any evidence that his sentence was increased because of the court's error.  Indeed, the evidence suggests the contrary.  Well before Defendant's alleged violation of the conditions of his release, the district court had rejected the 97-month sentence

---

[1]  The government contends that Condition 7 of the special conditions of Defendant's bond precluded him from working on a computer.  But it requires only that he "[m]aintain and submit to Pretrial Services a listing and identification of all computers *used* by defendant that belong to others including computers used at school or employment."  Supp. R. at 8 (emphasis added).  This condition appears to contemplate that Defendant would be using computers.

set in the plea agreement because of its concern that the below-guidelines sentence would lead to inconsistent sentences among defendants convicted of similar offenses. Having read the PSR, the court was clearly inclined to impose a within-guidelines sentence. Perhaps a sentence at the upper end of the guideline range would have suggested that the court was negatively influenced by what it had learned after it rejected the plea agreement, but the sentence actually imposed was at the bottom of the range.

In sum, Defendant is not entitled to reversal of his sentence on the ground of procedural reasonableness.

## IV. Conclusion

We AFFIRM Defendant's sentence.

Entered for the Court

Harris L Hartz
Circuit Judge