**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 15-3291

MARK ANTHONY WIREMAN,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:15-CR-10012-JTM-1)**
_____

Paige A. Nichols, Research & Writing Specialist (Melody Brannon, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Topeka, Kansas, for Defendant-Appellant.

Jason W. Hart, Assistant United States Attorney (Thomas E. Beall, Acting United States Attorney, with him on the brief), Office of the United States Attorney, District of Kansas, Wichita, Kansas, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **McKAY**, and **BALDOCK**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

Reviewing whether a district court adequately explained a defendant's sentence is more of an art than a science. This inquiry, which goes to the ultimate question whether the defendant's sentence is procedurally reasonable, *Gall v. United*

*States*, 552 U.S. 38, 51 (2007), compels us to ensure that the district court "considered the parties' arguments" for different sentences—an obligation that "normally" requires the district court to "explain why [it] . . . rejected" any "non-frivolous" arguments—and that the district court "ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority," *Rita v. United States*, 551 U.S. 338, 356–57 (2007). But the manner in which the district court must engage in this analysis is not static across all cases: "The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not." *Rita*, 551 U.S. at 356.

But no matter how inherently fluid this area of law may be, we have held time and time again that a district court does not run astray of its duty to "consider[] the parties' arguments" simply because it does not directly address those arguments head-on—assuming, that is, that the district court imposes a within-Guidelines sentence. Indeed, if the defendant's sentence is within the applicable Guidelines range, the district court may satisfy its obligation to explain its reasons for rejecting the defendant's arguments for a below-Guidelines sentence by "*entertain*[*ing*] [the defendant's] . . . arguments," *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1202–03 & n.4 (10th Cir. 2007) (emphasis added), and then "somehow indicat[ing] that [it] did not rest on the guidelines alone, but considered whether the guideline sentence actually conforms, in the circumstances, to the [18 U.S.C. § 3553(a)] statutory factors," *United States v. Martinez-Barragan*, 545 F.3d 894, 903 (10th Cir. 2008)

2

(second alteration in original) (internal quotation marks omitted). Such a "functional rejection" of a defendant's arguments—as opposed to an explicit rejection—is entirely proper. *Martinez-Barragan*, 545 F.3d at 903 (internal quotation marks omitted).

Nonetheless, Defendant Mark Anthony Wireman argues today that his sentence is procedurally unreasonable because the district court did not specifically address and reject his arguments for a downward variance from his within-Guidelines sentence. We must decide whether the particular argument he made to the district court—namely, that the Guideline under which he was sentenced was inherently flawed on policy grounds—warrants an exception to our long-held rule that the district court was not required to explicitly address and reject his arguments in such an instance. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we hold that it does not and affirm.

\*

Defendant is a frequent sexual offender who, in this particular instance, pleaded guilty to five counts of distributing child pornography in violation of 18 U.S.C. § 2252(a)(2) and one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). In short, and without going into graphic detail, Defendant emailed one of his friends several images of child pornography and discussed the images over the phone with this man for their mutual sexual gratification. Defendant also emailed this same friend non-pornographic images of

3

children he personally knew and claimed in these emails—claims that he now contends were simply fantasies—that he had sexually abused these children.

Defendant's prior sexual offenses had also involved children: at the time he pleaded guilty in this case, Defendant had already been convicted of five different sexually based crimes involving minors. In four of the five instances, Defendant actually had physical sexual contact with a minor. In the fifth instance he provided a minor with sexually explicit material. In light of this extensive criminal history, Defendant's Presentence Investigation Report (PSR) indicated that he had a criminal history category of IV.

Section 2G2.2 of the United States Sentencing Guidelines (U.S.S.G.), the applicable sentencing provision for Defendant's crimes, set the base offense level for Defendant's sentence at 22. *See* U.S.S.G. § 2G2.2(a)(2). Further, five Specific Offense Characteristics under § 2G2.2 applied to Defendant and increased his offense level: (1) a 2-level increase because the material at issue involved prepubescent minors, *see* U.S.S.G. § 2G2.2(b)(2); (2) a 2-level increase because he generically distributed material involving the sexual exploitation of a minor, *see* U.S.S.G. § 2G2.2(b)(3)(F); (3) a 4-level increase because the material involved sadistic, masochistic, or violent depictions, *see* U.S.S.G. § 2G2.2(b)(4); (4) a 5-level increase because he engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, *see* § 2G2.2(b)(5); and (5) a 2-level increase because he used a computer or interactive computer service to distribute the material, *see* § 2G2.2(b)(6). Thus, after factoring in a 3-level decrease for Defendant's acceptance of responsibility,

4

Defendant's total offense level was 34. Coupled with his category IV criminal history, a total offense level of 34 corresponded to a guideline range of 210–262 months' imprisonment.

As is relevant here, Defendant argued in a sentencing memorandum to the district court that he was entitled to a downward variance from the guideline range because § 2G2.2 is inherently flawed. He made three sub-arguments in support of this claim: first, that § 2G2.2(a)(2)'s base offense level of 22 is "harsher than necessary" under the 18 U.S.C. § 3553(a) sentencing factors; second, that courts should be hesitant to rely on § 2G2.2 because the Sentencing Commission did not depend on empirical data when drafting § 2G2.2; and third, that the Specific Offense Characteristics outlined in § 2G2.2 are utilized so often "that they apply in nearly every child-pornography case" and therefore fail to distinguish between various offenders. Defendant then argued in the memorandum that his individual circumstances—including a traumatizing childhood where he was repeatedly sexually abused by family members and the fact that in this instance he shared a relatively small amount of child pornography with only one of his friends—warranted a downward variance from this excessive guideline range.

At sentencing, the district court alluded to the memorandum but did not speak at length about it:

> [Defendant's counsel] has filed, on behalf of [Defendant], a motion for downward variance and a sentencing memorandum, as well.
> . . . .

5

> . . . Frankly, I'm struggling with a lot of the issues that have been raised in . . . [Defendant's counsel's] memorandum on [Defendant's] behalf.
>
> They're arguments that [Defendant's counsel] has made before and that I anticipate he will keep making until they're addressed in a meaningful way by an appellate court, and probably even after that, if he feels the appellate court still doesn't have it right. All of that is to be admired and respected but it may not control at this point.

Beyond this instance, the district court never again mentioned the sentencing memorandum or Defendant's arguments by name. But when finally sentencing Defendant, the district court stated the following:

> [T]he really difficult part is trying to determine a sentence that's sufficient but not greater than necessary, which essentially means the minimum acceptable sentence in this case to comply with the purposes of sentencing.
>
> And, obviously, I am considering the sentencing guidelines, which promote uniformity in sentencing, to some extent, although I have to say in this particular area there's not much in the way of uniformity and I think that courts are all over the map, as both [the government] and [Defendant's counsel] have indicated, because, frankly, offenders are all over the map . . . . But we hope to find some thread of uniformity in sentencing and the guidelines help in that regard by weighing the basic nature of the offense, as well as aggravating and mitigating factors.

The district court also remarked that "everybody here has done quite an extraordinary job in presenting . . . to me" all the relevant information pertaining to Defendant's sentence.

The district court ultimately sentenced Defendant to concurrent terms of 240 months' imprisonment on each of the six counts against him. In coming to this decision, the district court was particularly concerned with the personal nature of the

6

non-pornographic images Defendant emailed to his friend as well as Defendant's criminal history:

> [Defendant's counsel] has talked about the relatively few number of [child pornography] images that are involved, and certainly that's one factor, but there's also far more personal images than a lot of what one simply downloads on the internet where there's no personal connection to the people who are in these images. And I don't think that the number of images that were involving or are involved here cuts in [Defendant's]—or cuts to his benefit when the persons who are in the images are known in some way or another to the parties that are exchanging them.
>
> As I say, I think that there is something that is—makes a person less culpable downloading a thousand images from some unknown person and sharing them with a friend, than uploading or sharing ten images of children that they know . . . .
>
> Second thing, and, again, this goes to the sentence, and it's an important factor to me, is [Defendant's] history. . . .
>
> . . . .
>
> . . . [W]hile I don't think warehousing people is an appropriate goal standing alone, I do think that there are some people that pose a danger to the people who are around them, and your conduct at least would indicate that you are one of those people.
>
> . . . .
>
> I don't know if you could sit there today and tell me in good conscience that if you walked out of here you would never commit this kind of an offense again, and even if you told me that, and even if you believed it yourself, I'm not sure that I could believe it just based on what information I have seen and reviewed over the years relating to these kinds of offenses.

After handing down its sentence, the district court concluded the proceedings by asking Defendant and his counsel if they had "anything further." Defendant's counsel stated that they did not.

\*

In a powerful and well-written brief, Defendant now claims on appeal that his sentence is procedurally unreasonable because the district court did not adequately

7

address his critiques of § 2G2.2. He therefore asks us to vacate his sentence and remand to the district court for resentencing.

We first address our standard of review. Defendant asks us to apply *de novo* review because, by submitting his memorandum for a downward variance to the district court, he "did everything necessary to alert the district court to the need to address the policy grounds for [his] requested variance." But contrary to his contention, Defendant did not do *everything* necessary. We have previously held that even if a district court is fully apprised of a defendant's arguments for a below-Guidelines sentence, the defendant must still contemporaneously object in the district court to "the *method* by which the district court arrived at a sentence, including arguments that the sentencing court failed to explain adequately the sentence imposed," if he or she hopes to avoid plain error review on appeal of any alleged procedural flaw. *United States v. Romero*, 491 F.3d 1173, 1176–77 (10th Cir. 2007) (emphasis added). Here, Defendant did not object to the district court's alleged lack of explanation even though the district court explicitly asked him if he had "anything further." *Cf. United States v. Marquez*, 833 F.3d 1217, 1220 n.1 (10th Cir. 2016) (holding that the district court provided the defendant with "a sufficient opportunity to register an objection" when it asked him whether he had "'[a]nything else this morning' to address" (alteration in original)). Thus, since we cannot deviate from our prior precedent and required standard of review "barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court," *United States v. Edward J.*, 224 F.3d 1216, 1220 (10th

8

Cir. 2000), we must apply plain error review in our quest to determine whether the district court adequately explained its reasons for rejecting Defendant's arguments for a downward variance. We will find plain error only when there is "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Marquez*, 833 F.3d at 1221 (internal quotation marks omitted).

In evaluating the first prong of the plain error standard—whether the district court committed error—we again note that a district court must explain its reasons for rejecting a defendant's nonfrivolous arguments for a more lenient sentence. *Rita*, 551 U.S. at 357. And undoubtedly, Defendant's critiques of § 2G2.2 were nonfrivolous. The Supreme Court has held in other contexts that district courts may vary from the Sentencing Guidelines "based on a policy disagreement with those Guidelines" and "not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, 555 U.S. 261, 264, 266–67 (2009) (considering the sentencing disparities for crack and powder cocaine offenses under the Sentencing Guidelines and concluding that "district courts are entitled to vary from the crack-cocaine guidelines in a mine-run case where there are no particular circumstances that would otherwise justify a variance from the Guidelines' sentencing range" (internal quotation marks omitted)); *see also Kimbrough v. United States*, 552 U.S. 85, 110 (2007) (same). Some of our sister circuits have extended this logic to child pornography offenses and § 2G2.2. *See, e.g.*, *United States v. Grober*, 624 F.3d 592, 608–09 (3d Cir. 2010); *United States v.*

9

*Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010). We ourselves have even described arguments criticizing § 2G2.2 as "quite forceful," *United States v. Regan*, 627 F.3d 1348, 1354 (10th Cir. 2010), and have specifically cautioned district courts to "carefully apply the child pornography distribution guideline and remain mindful that they possess broad discretion in fashioning sentences under . . . § 2G2.2," *United States v. Grigsby*, 749 F.3d 908, 911 (10th Cir. 2014).

But even though Defendant's critiques of § 2G2.2 were nonfrivolous, we again emphasize that the manner in which a district court must explain its reasons for rejecting a defendant's arguments is not set in stone across all cases. Different standards govern depending on "how closely [the district court's] own judgment about the appropriate sentence . . . aligns with the judgment embodied in the Guidelines." *Ruiz-Terrazas*, 477 F.3d at 1201. Indeed, whether a district court can functionally reject or instead must explicitly reject a defendant's arguments pivots on whether it ultimately imposes a sentence that is within or outside of the applicable Guidelines range. *See id.*

Accordingly, when a district court has varied upwards from the Guidelines, our cases have generally required the district court to specifically address and reject the arguments the defendant made for a more lenient sentence. For example, we held in *United States v. Pinson*, 542 F.3d 822 (10th Cir. 2008), that the district court, in a context where it imposed an upward-variant sentence, "*must also address*, in its statement of reasons, the material, non-frivolous arguments made by the defendant." *Id.* at 833 (emphasis added). Likewise, we held in *United States v. Lente*, 647 F.3d

10

1021 (10th Cir. 2011), that "[f]or us to conduct meaningful appellate review of the district court's significant upward-variant sentence, the district court *must expressly . . . address* [the defendant's] argument that her sentence would create unwarranted sentencing disparities." *Id.* at 1035 (emphasis added) (internal quotation marks omitted); *cf.* 18 U.S.C. § 3553(c)(2) (requiring the district court to state "the *specific* reason for the imposition of a sentence" when it imposes a sentence outside of the Guidelines range (emphasis added)).

But when the district court has imposed a sentence within the Guidelines, our cases have noted that the district court need *not* specifically address and reject each of the defendant's arguments for leniency so long as the court "somehow indicate[s] that [it] did not rest on the guidelines alone, but considered whether the guideline sentence actually conforms, in the circumstances, to the [18 U.S.C. § 3553(a)] statutory factors." *Martinez-Barragan*, 545 F.3d at 903 (second alteration in original) (internal quotation marks omitted); *see also id.* (noting that when a district court imposes a within-Guidelines sentence, "[t]he court must provide only a general statement of its reasons and *need not explicitly . . . respond* to every argument for leniency that it rejects in arriving at a reasonable sentence" (emphasis added) (citations and internal quotation marks omitted)). For instance, in *United States v. Ruiz-Terrazas*, 477 F.3d 1196 (10th Cir. 2007), we ruled that the district court was not required to "*specifically address* [the] defendant's arguments" for leniency before rendering a within-Guidelines sentence, because it had "*entertained* [the defendant's] . . . arguments at length; indicated on the record that it had considered

11

the Section 3553(a) factors; and proceeded to explain its reliance on the range suggested by the sentencing Guidelines." *Id.* at 1202–03 & n.4 (emphases added). And in *United States v. Jarrillo-Luna*, 478 F.3d 1226 (10th Cir. 2007), we held that the district court did not err in failing to explicitly address the defendant's arguments for a below-Guidelines sentence because (1) the district court adequately explained its reasons for the within-Guidelines sentence and (2) "a district court's duty to explain why it chose the given sentence *does not also require it to explain* why it decided against a different sentence." *Id.* at 1230 (emphasis added), *overruled on other grounds by United States v. Lopez-Macias*, 661 F.3d 485, 491 (10th Cir. 2011); *cf.* 18 U.S.C. § 3553(c) (requiring the district court to provide only a *general* statement of "the reasons for its imposition of the particular sentence" when it imposes a sentence within the Guidelines range); *United States v. Sanchez-Jaurez*, 446 F.3d 1109, 1115–18 (10th Cir. 2006) (vacating and remanding for resentencing because the district court "failed to consider [the defendant's] arguments" *and* because "[t]he record indicate[d] that at no time during the sentencing hearing or when imposing the sentence did the district court refer to the § 3553(a) factors" or otherwise "state[] . . . reasons for the sentence it imposed").

We are not persuaded that the principle we note above—that a district court need not specifically address and instead may functionally reject a defendant's arguments for leniency when it sentences him within the Guidelines range—should differ just because the defendant critiques the applicable Guideline itself on policy grounds, as Defendant does in the case before us today. In our circuit, "a within-

guideline-range sentence that the district court properly calculated . . . is entitled to a rebuttable presumption of reasonableness" on appeal, *Grigsby*, 749 F.3d at 909, and this presumption of reasonableness holds true *even if* the Guideline at issue arguably contains "serious flaws" or otherwise "lack[s] an empirical basis," *United States v. Nghiem*, 432 F. App'x 753, 757 (10th Cir. 2011) (unpublished). In fact, we even held in a recent case that "we apply the presumption of reasonableness to sentences based on 2G2.2, regardless of its alleged lack of empirical support." *United States v. Franklin*, 785 F.3d 1365, 1370 (10th Cir. 2015). We would be disregarding the spirit of this appellate presumption if we were to require the district court to defend § 2G2.2 or any other Guideline that leads to such a presumptively reasonable sentence. Even more, although a district court "does not enjoy the benefit" of that same presumption of reasonableness when fashioning a sentence, *Rita*, 551 U.S. at 351, it may still conclude "in its individualized judgment" that *any* given Guideline is reasonable and should be given "considerable weight," *United States v. Zamora-Solorzano*, 528 F.3d 1247, 1250–51 (10th Cir. 2008). And in making that conclusion, we have never held that the district court must explain away or otherwise justify any perceived deficiencies that particular Guideline may have. *See Nghiem*, 432 F. App'x at 757 ("[A] district court is not required to engage in 'independent analysis' of the empirical justifications and deliberative undertakings that led to a particular Guideline." (internal quotation marks omitted)). Indeed, both our appellate presumption of reasonableness for within-Guidelines sentences and the district court's ability to choose to rely on a Guideline without excusing its faults stem from

13

the basic premise that "Guidelines levels can properly follow Congressional policy regarding the severity of punishment appropriate for particular offenses" even if that policy was "not . . . founded on scientific data." *Id.* (citing *United States v. Alvarez-Bernabe*, 626 F.3d 1161, 1165–66 (10th Cir. 2010)); *see also Grigsby*, 749 F.3d at 911 ("[T]his does not mean a within-guideline-range sentence based on a guideline lacking an empirical basis is necessarily *unreasonable*, and none of our sister circuits have ever so held." (emphasis added)).

Defendant argues against this conclusion by directing us to *United States v. Morrison*, 771 F.3d 687 (10th Cir. 2014), another case where we determined whether a district court had adequately explained why it rejected a defendant's request for a downward variance based on his critiques of § 2G2.2. *Id.* at 691. Specifically, the defendant had argued for a below-Guidelines sentence because he believed the 2-level use-of-a-computer enhancement under § 2G2.2 was unsound. *Id.* The district court denied the motion, explaining that "there is a growing idea, but I don't think it has morphed into a consensus yet. And I don't think the particular adjustment for use of a computer is so disparate, so overly penal that I feel like it is something that needs judicial check, yet." *Id.* (internal quotation marks omitted). The district court further explained that "it was denying the variance because of a 'combination of factors' and because 'use of the computer does facilitate distribution and the ability to have so many photographs or images.'" *Id.* On appeal, we rejected the defendant's argument that his sentence was procedurally unreasonable, because (1) "[t]he court considered [the defendant's] policy objections at sentencing, and

14

although brief, the court gave a sufficient explanation for rejecting them," and (2) "the court offered a thorough explanation for why it believed the [defendant's within-Guidelines] sentence was reasonable in light of all of the objectives set forth in 18 U.S.C. § 3553(a)." *Id.* at 693.

Defendant notes that "[t]he district court in *Morrison* explicitly considered counsel's critique of the use-of-a-computer enhancement and explicitly explained that it disagreed with that critique and thought the enhancement fairly measured culpable conduct." He consequently argues that "*Morrison* demonstrates how a district court *should* handle a guideline critique (address it head-on)" and that the case "supports resentencing in [his] case."

We agree with Defendant that the district court in *Morrison* should be lauded for directly addressing and rejecting the defendant's policy arguments for a downward variance. Even so, the fact that the district court in *Morrison* went above its call of duty does not mean that other district courts fall short of their duties when they do *not* directly address and reject defendants' policy critiques of individual Guidelines. Indeed, although we labeled the *Morrison* district court's explanations for rejecting the defendant's critiques as "sufficient" and "brief," we did not intend to imply that anything *less* than what the district court did in that case—i.e., specifically address and reject the defendant's critiques—was necessarily deficient. Even in light of *Morrison*, a district court still need not explicitly address a defendant's arguments for a below-Guidelines sentence based on a policy critique of the Guidelines so long as (1) the ultimate sentence is within the applicable Guidelines range, and (2) "'[c]ontext and the record make clear'

15

the district court's reasoning for rejecting [the defendant's] arguments." *United States v. Cereceres-Zavala*, 499 F.3d 1211, 1217 (10th Cir. 2007) (quoting *Rita*, 551 U.S. at 359).

We take this opportunity, however, to encourage district courts to go beyond the bare minimum. It never hurts (indeed, it can only help) for a district court to directly address and refuse a defendant's arguments for leniency even if that is not required of it. "[A] more detailed sentencing explanation can often prove beneficial, even if it is not mandatory, helping to reduce confusion among the parties, facilitate and expedite judicial review, and provide guidance to practitioners and other defendants, enabling them to better predict the type of sentence that will be imposed in their cases." *Ruiz-Terrazas*, 477 F.3d at 1202.

\*

With all this in mind, we turn to whether the district court adequately explained why it rejected Defendant's arguments for a downward variance based on his critiques of § 2G2.2. To start, there is no denying that, at the very least, the district court was *aware* of Defendant's arguments for a downward variance, for the district court explicitly referenced Defendant's sentencing memorandum at the beginning of the sentencing hearing (i.e., "I'm struggling with a lot of the issues that have been raised in" Defendant's memorandum, "but it may not control at this point"). At the same time, there is also no denying that the district court never *explicitly* rejected Defendant's arguments afterward.

But the district court did not have to explicitly reject Defendant's arguments. The district court's ultimate sentence of 240 months' imprisonment was right in the

16

middle of the suggested Guidelines range of 210–262 months' imprisonment. As such, it needed only to "indicate that [it] did not rest on the guidelines alone, but considered whether the guideline sentence actually conforms, in the circumstances, to the [§ 3553(a)] statutory factors." *Martinez-Barragan*, 545 F.3d at 903.

And the district court did just that. For one thing, after entertaining the government's arguments against Defendant's sentencing memorandum and his corresponding policy critiques of § 2G2.2, the district court stated that it felt it should rely on the suggested Guidelines range "to some extent" even though "courts are all over the map" with § 2G2.2 because it "hope[d] to find some thread of uniformity in sentencing and the guidelines help in that regard." The district court also offered a detailed explanation in which it determined that Defendant's extensive criminal history and the personal nature of the emailed images demanded it sentence Defendant to a long term of imprisonment. The court's concerns about Defendant's history and the personal nature of the images, coupled with its decision to rely on § 2G2.2's suggested guideline range, thus acted as a functional rejection of Defendant's policy disagreements with § 2G2.2. Indeed, we are satisfied that the district court had Defendant's arguments in mind when sentencing him but ultimately felt that those arguments were unpersuasive and paled in comparison to Defendant's conduct and criminal history. Consequently, the district court did not err by not explicitly responding to Defendant's arguments for a more lenient sentence, and it was not required to defend § 2G2.2 or otherwise do or say anything more.

17

Because the district court did not err, we need not reach the other three prongs of plain error review and conclude that Defendant's sentence is procedurally reasonable. And because Defendant does not otherwise challenge that his prison sentence is substantively unreasonable, his sentence is therefore

AFFIRMED.

15-3291, *United States v. Wireman*

**McKAY**, Circuit Judge, concurring in the judgment.

I concur in the judgment only. I agree with the majority's well-reasoned opinion that plain-error review applies here and that Defendant cannot satisfy this standard. But I disagree that Defendant failed the first prong of plain-error review. I write separately because I believe the district court erred by failing to explain why it rejected Defendant's nonfrivolous argument that U.S.S.G. § 2G2.2 reflects an unsound judgment.

On appeal, Defendant contends that his sentence is procedurally unreasonable because the district court failed to address his critiques of § 2G2.2. "The [district] court, at the time of sentencing," must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). "[F]ailing to adequately explain the chosen sentence" is a procedural error. *United States v. Sanchez-Leon*, 764 F.3d 1248, 1261 (10th Cir. 2014). What counts as adequate "depends upon circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007). Sometimes the sentencing court "responds to every argument; sometimes it does not." *Id.* But a district court must "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments." *Id.*

When a district court imposes a within-Guidelines sentence, as it did here, "doing so will not necessarily require lengthy explanation." *Id.* In such cases, the "court must provide only a general statement of its reasons." *United States v. Martinez-Barragan*, 545 F.3d 894, 903 (10th Cir. 2008). It "normally need say no more." *Rita*, 551 U.S. at 357. "Unless," that is, "a party contests the Guidelines sentence generally under

§3553(a)," i.e. "argues that the Guidelines reflect an unsound judgment." *Id*. Then the sentencing judge should "go further and explain why he has rejected those arguments." *Id*. This is precisely the kind of argument Defendant made here—that § 2G2.2 reflects an unsound judgment.

"Part of the sentencing judge's obligation under 3553(c) is to respond to a defendant's 'nonfrivolous reasons for imposing a different sentence.'" *United States v. Mack*, 841 F.3d 514, 523 (D.C. Cir. 2016) (quoting *Rita*, 551 U.S. at 357). As the majority recognizes, "undoubtedly, Defendant's critiques of § 2G2.2 were nonfrivolous." (Maj. Op. at 9.) This is not "a situation where a judge failed to address an argument that was so weak as not to merit discussion." *United States v. Poulin*, 745 F.3d 796, 801 (7th Cir. 2014) (internal quotation marks omitted). Indeed, we have characterized such arguments against §2G2.2 as "quite forceful." *United States v. Regan*, 627 F.3d 1348, 1354 (10th Cir. 2010). And district courts have been cautioned to "carefully apply" § 2G2.2. *See United States v. Grigsby*, 749 F.3d 908, 911 (10th Cir. 2014).

Yet, the district court did not respond to Defendant's arguments that § 2G2.2 reflects an unsound judgment. Though the court said its sentence was based on Defendant's criminal history and the nature of the offense, this does not explain why the district court rejected Defendant's policy argument. The district court also mentioned one policy critique of § 2G.2.2—noting "there's not much in the way of uniformity" (R. Vol. III at 41)—but this was not an argument raised by Defendant. In fact, Defendant argued precisely the opposite—that § 2G2.2 sentences are too similar.

It is true, as the majority points out, that a district court does not need to "respond to *every* argument for leniency that it rejects in arriving at a reasonable sentence." *Sanchez-Leon*, 764 F.3d at 1266 (emphasis added). That is the rule for the mine run of cases. In the typical case, it makes perfect sense not to require the district court to address *every* argument for leniency because there is practically no limit to the number of arguments a party could make regarding the "nature and circumstances of the offense" or the "history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1). Every sentencing transcript would read like a Capote novel.

But policy critiques of the Guidelines are different and deserve more attention. *See Rita*, 551 U.S. at 357. For starters, there are only so many nonfrivolous policy arguments that a party can make. Second, it is the difference between arguing about a starting point and an end point. The Guidelines anchor a sentencing: the district court sets the Guidelines range—the starting point—at the outset, and then the parties argue whether the facts and circumstances of the case call for a different endpoint. By contrast, challenging the Guidelines themselves is more like rejecting the starting point. If the applicable Guidelines do not reflect a sound judgment, it stands to reason that they should not anchor the sentencing. And because the anchoring effect of the Guidelines is so strong (as it was intended to be), a winning policy argument would have an outsized effect on the sentencing proceedings.

In my opinion, the majority has not required enough of the district court. Because Defendant presented nonfrivolous arguments that the Guidelines reflect an unsound judgment, I believe the district court should have responded and more fully explained its

decision. *See Rita* 551 U.S. at 356–57; *see also Poulin*, 745 F.3d at 801 (holding that the district court was "required to consider [a policy argument against § 2G2.2] and then provide reasons explaining his acceptance or rejection of it"). The district court did not do that. After obliquely referring to Defendant's sentencing memorandum at the start of the proceeding, the sentencing judge never returned to the matter to explain his decision to reject Defendant's policy arguments. All we know is that he did reject it. Accordingly, I believe the district court procedurally erred.

\*

I also write separately to question the wisdom of applying the "reasonableness" presumption to within-Guidelines sentences "regardless of [a particular Guideline's] alleged lack of empirical support." *United States v. Franklin*, 785 F.3d 1365, 1370 (10th Cir.), *cert. denied*, 136 S. Ct. 523 (2015). The majority correctly recognizes that this circuit presumes the substantive reasonableness of within-Guideline sentences "even if the Guideline at issue arguably contains serious flaws or otherwise lacks an empirical basis." (Maj. Op. at 13 (internal quotation marks, brackets, and emphasis omitted).) This presumption is important for a number of reasons, not the least of which is that it lowers the bar for how much we will require a sentencing court to say.

The Supreme Court has upheld our appellate presumption-of-reasonableness standard of review "because 'when the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable.'" *United States v. McBride*, 633 F.3d 1229, 1232–33 (10th Cir. 2011) (quoting *Rita*, 551 U.S. at 351). The reasonableness

presumption on appellate review "reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case." *Rita*, 551 U.S. at 347 (emphasis omitted). It is this "double determination" that "significantly increases the likelihood that the sentence is a reasonable one." *Id*.

But § 2G2.2 "is fundamentally different from most [guideline provisions]." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). "Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices." *Id*. When it comes to § 2G2.2, however, "the Commission did not use this empirical approach." *Id*. "Instead, at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties." *Id*. What's more, even "[t]he Commission has often openly opposed these Congressionally directed changes." *Id*. at 185; *see also Grigsby*, 749 F.3d at 911 (noting that the Commission has "essentially endorsed the Second Circuit's view of § 2G2.2").

The reasonableness presumption also "reflects the nature of the Guidelines-writing task that Congress set for the Commission and the manner in which the Commission carried out that task." *Rita*, 551 U.S. at 347. "In instructing both the *sentencing judge* and the *Commission* what to do, Congress referred to the basic sentencing objectives that the statute sets forth in 18 U.S.C. § 3553(a)." *Id.* But, again, § 2G2.2 is "an eccentric Guideline of highly unusual provenance." *Dorvee*, 616 F.3d at 188. The Commission

did not carry out its Guidelines-writing task in accordance with §3553(a)'s sentencing objectives. *See id.* at 187. Indeed, § 2G2.2 "is fundamentally incompatible with §3553(a)"; because it "concentra[tes] all offenders at or near the statutory maximum, §2G2.2 eviscerates the fundamental statutory requirement in § 3553(a)." *Id.*

When, as here, there is no "double determination"—when the sentencing judge and Sentencing Commission do not agree—when the Guidelines do not reflect §3553(a)'s sentencing objectives—we should not presume the sentence's reasonableness, even if it falls within the Guidelines. In such cases, I believe, we should require the district court to provide *more* of an explanation, not less. *Cf. Rita*, 551 U.S. at 357 (recognizing that when a defendant "argues that the Guidelines reflect an unsound judgment, . . . the judge will normally go further and explain why he has rejected those arguments"). But that is not the rule in this circuit, *see Franklin*, 785 F.3d at 1370, and the majority faithfully adhered to this binding precedent, as we must.

\*

Even though I believe the district court erred, I concur in the judgment because I believe that Defendant cannot overcome plain-error review. Because Defendant failed to object to the procedural error in the district court, we must review the sentence for plain error. This is a "demanding standard" that is "difficult to overcome." *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014). Defendant "must demonstrate (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights," and the error must "seriously affect[] the fairness, integrity, or

public reputation of judicial proceedings" in order for the court to grant discretionary relief. *Id.*

Here, Defendant has not established that the error affected his substantial rights. "An error seriously affects the defendant's substantial rights, as those terms are used in the plain-error test, when the defendant demonstrates that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

On appeal, Defendant essentially rehashes his § 3553(a) arguments from below. He presents the bad with the good, and argues that "the district court's express consideration" of his policy argument "would have tipped the balance toward a more lenient sentence." (Appellant's Op. Br. at 26.) But there is nothing in the record to suggest that the district court was reluctant to impose the sentence that it did. To the contrary, it imposed a middle-of-the-Guidelines sentence, and it discussed Defendant's criminal history and the personal nature of some of the shared images. Defendant also argues that "the district court signaled in its Statement of Reasons that it would impose a different sentence in the event of a guideline error, by declining to check the box indicating that it would impose an identical sentence in that event." (*Id.* at 27.) But, more accurately, this box, if checked, states that the court would impose an identical sentence "[i]n the event the guideline determination(s) made in this case are found to be incorrect." (R. Vol. II at 48.) That is not what happened here—although I believe the

- 7 -

district court erred by not addressing Defendant's policy arguments, its "guideline determinations" as such were not incorrect.

Because I agree with the majority that Defendant cannot overcome plain-error review, I concur in the judgment.