FILED
United States Court of Appeals
Tenth Circuit

December 14, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FAUSTINO SOTO,

Defendant - Appellant.

No. 16-3276
(D.C. No. 2:14-CR-20014-KHV-DJW-12)
D. Kansas

**ORDER AND JUDGMENT**[*]

Before **BACHARACH**, **McKAY**, and **MURPHY**, Circuit Judges.

I.     **Introduction**

Appellant Faustino Soto pleaded guilty to drug and firearm charges and was sentenced to a total term of imprisonment of 420 months. Soto appeals, arguing his Sixth Amendment rights were violated by the district court's failure to question him personally about a potential conflict between himself and his appointed counsel. He argues the district court also erred by failing to properly consider a motion to withdraw his guilty plea. Soto's claim of procedural

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentencing error is based on his assertion the district court failed to acknowledge his request for a downward variance from the advisory sentencing range.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court **affirms** Soto's convictions and sentence.

## II.    Background

Soto was charged in a sixth superseding indictment with four crimes: (1) conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine, (2) possession with intent to distribute more than five grams of methamphetamine, (3) possession of firearms in furtherance of a drug trafficking crime, and (4) possessing a firearm while being an unlawful user of a controlled substance.  During a change of plea hearing held on February 2, 2016, appointed counsel informed the district court that Soto intended to retain new counsel and did not want to plead guilty.  Soto's appointed counsel noted serious logistical issues that counseled against permitting Soto to retain new counsel, asserting it would be impossible for new counsel, who was ill and hospitalized, to prepare for trial on such short notice.[1]  Appointed counsel, nonetheless, sought a continuance on Soto's behalf.  The government opposed any continuance, asserting it believed Soto was threatening witnesses.  It wanted the case tried as

---

[1]The hearing was held on Tuesday February 2, 2016.  The trial was calendared to begin on Monday February 8, 2016.

soon as possible to minimize the possibility that witnesses would be intimidated

into not testifying.

Soto also spoke at the hearing and engaged in a colloquy with the district

court.

> The Court: Okay. Let's just talk about why you want a new lawyer
> or why you want the trial to be continued.
>
> Soto: For the reason that [Mr. Rork] was the attorney that was
> appointed to me that I had for my first case. And then when this
> case came up, [Mr. Rork] didn't show up. He's been very sick.
> Like, he's been sick and I don't know if—like, I felt like I was
> abandoned. So I would like to see if you could grant a continuance
> to see if I can get more help.
>
> The Court: What's wrong with [appointed counsel]?
>
> Soto: Well, what I know is that [Mr. Rork] has more experience in
> this type of cases and he said that he would help me. Honestly,
> that's the reason. I don't have a problem with [appointed counsel]
> but the numbers of—in the sentence are too much. Thirty to 35
> years is too much for the first time for the first mistake in my life.
>
> I have worked legitimately for over 20 years to help my daughters,
> and now my wife is taking care of them alone. That's why I'm
> asking you for an opportunity to see if I can reduce my sentence. I
> also have heart problems. I also had an open heart surgery five years
> ago and I have to check it regularly.
>
> I apologize for having changed my mind such at the last minute but
> I'm trying to see if I can get a fair sentence.

Soto also told the district court, "I know I'm guilty but I deserve an opportunity

. . . to see if I can reduce the sentence." Appointed counsel told the district court

Soto was being pressured by his family to not plead guilty and to retain a

-3-

different attorney. Soto confirmed that was true. When asked by the district court why he waited until six days before trial to seek substitute counsel, Soto told the court he had "been trying to hire [retained counsel] for a while."

The district court denied the request for substitute counsel, concluding Soto had "not shown any reason for a substitution of counsel." The court determined the evidence did not demonstrate either a conflict of interest or a complete breakdown of communication between Soto and appointed counsel. The court specifically noted that Soto "said he doesn't have any problem with [appointed counsel]." The district court also denied the request to continue the trial, concluding neither pressure from Soto's family nor Soto's desire to "get a better deal from the government or reduce his sentence" justified a continuance. Soto, still represented by appointed counsel, pleaded guilty two days later.

With adjustments and enhancements, the Presentence Investigation Report ("PSR") calculated Soto's total offense level as 38. Combined with Soto's criminal history category of I, his advisory guidelines sentencing range was 235 to 293 months' imprisonment. Both Soto and the government objected to the PSR. A sentencing hearing was held on August 23, 2016.

At the beginning of the hearing, Soto's appointed counsel advised the district court that a "third person," whom he believed to be named Abdullah Qawi, had filed motions in Soto's case. Counsel represented to the court that Mr. Qawi "holds himself out to be a legal consultant or a paralegal with a business

that is being held out as Raw, R-A-W, Legal Assistance." The motions filed by Mr. Qawi included a motion for a continuance, a motion to withdraw the guilty plea, and a motion titled, "Motion For Appointment of New Counsel Due to Conflict of Interest." All three documents bore Soto's signature. When Soto was questioned by the district court, he confirmed that he had not signed any of the motions. The district court suggested striking the motions, stating "so if we strike these, we don't need to address them." Soto's appointed counsel replied, "I think that's probably accurate." The district court then struck the filings.

During an *in camera* discussion, appointed counsel explained to the district court the circumstances surrounding the filing of the motions. Appointed counsel was not notified of the motions before they were filed but became aware of them through the electronic case filing system. He stated he visited Soto "to get to the root of what was going on" when he suspected Soto's signature on the motions had been falsified. Soto confirmed they had been filed by someone retained by his family and that he had not signed them. Appointed counsel further informed the court that Soto's family had communicated Mr. Qawi's advice about a scheduled polygraph examination to Soto. Mr. Qawi's advice was contrary to the advice he had given Soto. Counsel characterized Mr. Qawi's involvement as the catalyst in a very brief breakdown in communication that delayed finalization of the polygraph. He represented to the court, however, that "Mr. Soto told me that

at that point he still wanted me to be his lawyer but we had an issue" with the polygraph.

Soto ultimately followed the advice of appointed counsel and the polygraph examination was conducted a few days later. Because of the short delay, however, appointed counsel was unable to provide the government with information it requested for the sentencing hearing. Accordingly, counsel asked the district court to continue Soto's sentencing. The government opposed a continuance, asserting it was prepared to go forward with sentencing even though it did not receive the requested information. It opposed any delay because of continuing concerns that Soto was involved in witness intimidation. After questioning Soto's appointed counsel about the issues surrounding the polygraph examination, the district court denied counsel's request to continue the sentencing.

The district court then ruled on the objections to the PSR, overruling Soto's drug-quantity objection and his objection to an obstruction enhancement. The court sustained the government's objection to application of the acceptance-of-responsibility adjustment, finding Soto had engaged in "a pattern of intimidation and harassment." The district court also sustained a two-level increase under § 2D1.1(b)(2) for maintaining a residence for the purpose of distributing a controlled substance.

The district court determined Soto's total offense level was forty-two, his criminal history category was I, and his advisory guidelines range was 360 months' to life imprisonment. Soto then argued for a below-Guidelines sentence, emphasizing his family circumstances and his history and characteristics. Soto addressed the district court himself, expressing his remorse and telling the court he began dealing drugs because he had "a lot of bills to pay." The district court imposed a total term of 420 months' imprisonment. The court explained the sentence as follows:

> As I was saying, when I'm trying to consider what type of sentence is appropriate, I have to take into account the scope of defendant's involvement in the drug activities which are the subject of this case.
>
> I take in too the fact that methamphetamine is an extremely . . . destructive and addictive drug which has brought a lot of human misery into our community and that Mr. Soto is responsible for that on a major scale.
>
> I also take into account the fact that he is in criminal history category one and has no prior convictions aside from two minor traffic offenses.
>
> It's also important to know the significant danger that is presented to the community when drug traffickers possess firearms, as they did in the scope of this case.
>
> So taking all of these factors and others into account, it seems to me that defendant has not made a good case on why he should receive a sentence lower than what the guidelines provide.

## III. Discussion

### A. *Unauthorized Motions*

Soto's appeal centers on two of the three motions filed by Mr. Qawi: the motion for new counsel and the motion to withdraw the guilty plea. Soto asserts the motion for new counsel, even though it was not authorized by him, triggered a duty on the part of the district court to address him personally about the possibility of a conflict of interest. *See Holloway v. Arkansas*, 435 U.S. 475, 484 (1978) (holding a district court has a "duty to inquire" into a potential joint representation conflict of interest when the court is aware of the alleged conflict prior to trial). Although the record shows the district court discussed the matter with appointed counsel, Soto argues that discussion cannot serve as a proxy for the court's duty to inquire of him personally.

In *Holloway*, the case upon which Soto relies, the Supreme Court held that a district court must "take adequate steps to ascertain whether the risk" from joint representation warrants appointment of separate counsel. *Id.* at 484. The failure of the district court to take such steps "deprive[s] [defendants] of the guarantee of assistance of counsel" and mandates reversal. *Id.* The Court declined to extend *Holloway* to cases in which the defendant did not raise the conflict of interest prior to trial. *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980). It held in *Cuyler* that the Sixth Amendment does not require a state trial court to "initiate inquiries into the propriety of multiple representation" unless the court "knows or reasonably should know that a particular conflict exists." *Id.* at 346-47; *United States v. Williamson*, 859 F.3d 843, 852-53 (10th Cir. 2017) ("[A]bsent a credible

-8-

indication of an actual conflict of interest before trial, a trial court's duty to inquire is limited.  Prejudice will not be presumed, and the automatic reversal rule will not apply.").

Both *Holloway* and *Cuyler* involved multiple representation.  *Cuyler*, 446 U.S. at 346.  Recently, this court considered whether "*Holloway*'s duty to inquire (and automatic reversal if the trial court fails to inquire) extends outside the multiple representation context."  *Williamson*, 859 F.3d at 853.  We held "that the automatic reversal rule applies only to multiple representation conflicts of interest."  *Id*. at 856.  There is no "duty to inquire into potential conflicts of interest" when the potential conflict "is not a multiple representation conflict." *Id*.  Even if the trial court "knows or has reason to know of an *actual conflict*" and it fails to inquire, the automatic reversal rule does not apply and the defendant must show prejudice.  *Id*.

Here, Soto argues the district court was "on notice" that there was a potential conflict of interest.[2]  It is undisputed that this potential conflict did not

_____

[2]During the sentencing hearing, appointed counsel admitted to the district court there had been a breakdown in communication over a polygraph examination but represented to the court that he and Soto had resolved the issue and Soto "still wanted [him] to be his lawyer."  Soto nonetheless, argues the court could not rely on counsel's representations because counsel had "a strong self-interest in defending himself from what he might subjectively view as spurious accusations."  *But see Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) ("[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." (quotations omitted))  The record confirms counsel's representation to the court

(continued...)

involve multiple representation. Accordingly, under this court's holding in *Williamson*, the district court had no duty to inquire and, thus, no duty to personally address Soto at the sentencing hearing. *See id.* Even assuming a duty to inquire, Soto has not shown or attempted to show any prejudice, relying on *Holloway* for his assertion reversal is automatic. His argument therefore fails.

Soto also argues the district court abused its discretion when it "overruled" the "pro se" motion to withdraw the guilty plea. The problem with this argument is that Soto never filed a pro se motion to withdraw his guilty plea. A third party with no connection to Soto filed a fraudulent motion with a forged signature. Once the district court determined the motion was not filed by Soto, it struck the motion—the motion was not overruled. The district court did not abuse its discretion in striking the motion.

*B. Sentencing Variance*

In his opening appellate brief, Soto argued the district court committed procedural error by failing to acknowledge his non-frivolous arguments in favor of a variance from the advisory guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007). In his reply brief, Soto correctly acknowledges his argument is

---

[2](...continued) that Soto had taken the polygraph and Soto does not argue an actual conflict existed at the time of the sentencing hearing. *United States v. Williamson*, 859 F.3d 843, 852 (10th Cir. 2017) ("[A]n actual conflict exists when counsel is forced to make choices advancing other interests to the detriment of his client." (quotation and alteration omitted)).

foreclosed by this court's opinion in *United States v. Wireman*, 849 F.3d 956, 963 (10th Cir. 2017), but wishes to preserve the issue for en banc review or a certiorari petition.

## IV.  Conclusion

Soto's convictions and sentence are **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge