**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 30, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SEBRON DEJUAN BROWN,

    Defendant - Appellant.

No. 25-7026
(D.C. No. 6:20-CR-00102-DCJ-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

Sebron Dejuan Brown appeals his 48-month sentence on convictions for odometer fraud, conspiracy to commit odometer tampering, and conspiracy to commit wire fraud. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

A second superseding indictment charged Brown with conspiracy to commit odometer tampering (Count 1), two counts of odometer fraud (Counts 2 and 3), and

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

one count of conspiracy to commit wire fraud (Count 4).  The indictment alleged Brown devised a scheme to replace or roll back odometers in high-mileage vehicles owned by him or his co-conspirators, who would stage collisions involving the vehicles and sometimes unsuspecting third parties.  After deliberately crashing the vehicles, Brown submitted fraudulent insurance claims for bodily injury and vehicle repair costs, misrepresenting the vehicles' values.  He would then collect the insurance proceeds.  This scheme continued for four years until it was discovered in a government investigation, after which Brown cooperated and entered a blind guilty plea to all four counts.

A final presentence investigation report (PSR) assigned Brown a total offense level of 26 based in part on losses totaling $661,687.74.  The PSR added a two-level enhancement because Brown's "offense involved . . . the conscious or reckless risk of death or serious bodily injury."  U.S. Sent'g Guidelines Manual (U.S.S.G.) § 2B1.1(b)(16)(A) (U.S. Sent'g Comm'n 2021).  Coupled with a criminal history category of II, the PSR determined Brown's advisory guidelines range was 70 to 87 months in prison.

The parties thereafter stipulated to losses of $109,809.22, Brown was the organizer and leader of the scheme involving five or more participants, and there were fewer than ten victims.  Given these stipulations, the parties agreed his total offense level should be 16, reflecting a three-level reduction for acceptance of responsibility, a four-level enhancement because he was the organizer and leader of the conspiracy, and an eight-level enhancement for the loss amount.  They also

agreed to a criminal history category of II, which yielded an advisory guideline range of 24 to 30 months.

The district court accepted the PSR's facts as amended by the parties' stipulations and its criminal history category. But the district court rejected the total stipulated offense level and upheld the PSR's two-level enhancement under § 2B1.1(b)(16)(A) because the "offense involved . . . the conscious or reckless risk of death or serious bodily injury." Thus, with a total offense level of 18 and a criminal history category of II, the district court determined the advisory sentencing range was 30 to 37 months in prison.

But during the sentencing hearing, the district court announced Brown was "a strong candidate for an upward variance." R., vol. 1 at 132. After hearing argument on the propriety of a variance, the district court considered the sentencing factors at 18 U.S.C. § 3553(a) and determined an upward variance of 11 months over the high end of the advisory guidelines range was appropriate. The district court therefore sentenced Brown to concurrent sentences of 48 months on each of Counts 1 and 4, and 36 months on each of Counts 2 and 3. Brown now contends his sentence is both procedurally and substantively unreasonable.

## II

"We review sentences for reasonableness under a deferential abuse-of-discretion standard, under which we review de novo the district court's legal conclusions regarding the guidelines and review its factual findings for clear error." *United States v. Rocha*, 145 F.4th 1247, 1260 (10th Cir. 2025) (brackets,

3

citation, and internal quotation marks omitted). "Reasonableness review is a two-step process comprising a procedural and a substantive component." *Id.* (internal quotation marks omitted). "Procedural reasonableness looks at whether the district court committed any error in calculating or explaining the sentence." *United States v. Guevara-Lopez*, 147 F.4th 1174, 1183 (10th Cir. 2025) (internal quotation marks omitted). "Substantive reasonableness considers whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (internal quotation marks omitted).

   *A.   Procedural Reasonableness:  Application of U.S.S.G. § 2B1.1(b)(16)(A)*

   We first consider Brown's arguments challenging his sentence as procedurally unreasonable. He argues that the district court abused its discretion by imposing the two-level enhancement under § 2B1.1(b)(16)(A) for offenses involving the "conscious or reckless risk of death or serious bodily injury." The district court found that his "[staged accidents] did pose danger to other people," R., vol. 1 at 129:

> [T]he Court agrees with the probation office as to the danger caused . . .
> to third parties by staging accidents. Even a staged accident certainly
> can hurt other people, given the very nature of the fact that it's an
> automobile accident, and they're big pieces of machinery traveling at
> speeds that, even if unintended, can certainly hurt other people.

*Id.* at 130.

   Brown contends this enhancement should not apply without evidence that anyone was at risk of death or "serious bodily injury," which he says the district court failed to distinguish from mere "bodily injury." Aplt. Opening Br. at 24 (internal quotation marks omitted); *see also United States v. Maestas*, 642 F.3d 1315,

4

1322 (10th Cir. 2011) ("The government must prove facts necessary to support a guideline enhancement by a preponderance of the evidence."). But Brown admitted he "stage[d] accidents." R., vol. 1 at 164. And although the district court did not use the word "serious" in its description of the risk of injury Brown's scheme posed to others, it is readily apparent that the court recognized—correctly—that staged collisions carry an inherent risk of death or serious bodily injury. *See United States v. Lucien*, 347 F.3d 45, 56-57 (2d Cir. 2003) (upholding application of the enhancement where "the district court . . . found that the serious risk of bodily injury was inherent to [staged collisions]" because "the risk of bodily injury inheres in any deliberately caused accident" and "the risk of bodily injury is patent in this type of criminal activity" (brackets and internal quotation marks omitted)); *United States v. Hoffman*, 9 F.3d 49, 50 (8th Cir. 1993) (upholding enhancement "[b]ecause a risk of [serious bodily injury] is inherent in the automobile accidents [defendant] arranged"); *see also Maestas*, 642 F.3d at 1322 (upholding enhancement where the district court concluded there was an inherent risk of serious bodily injury). Because the district court recognized the inherent risk of serious bodily injury in staged automobile collisions, we reject Brown's argument that the district court was required to make findings about the specific degree of risk created by the particular conduct attending the collisions he staged. *See* Aplt. Opening Br. at 26-28; Aplt. Reply Br. at 3-4.

B. *Procedural Reasonableness: Explanation for U.S.S.G. § 2B1.1(b)(16)(A)*

Brown also challenges the adequacy of the district court's explanation for applying § 2B1.1(b)(16)(A). We review only for plain error because Brown failed to

5

object to the adequacy of the district court's explanation. *See United States v. Wireman*, 849 F.3d 956, 962 (10th Cir. 2017). "We will find plain error only when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). Here, there was no error. As described above, the district court explained that § 2B1.1(b)(16)(A) applies because Brown admitted he staged motor vehicle wrecks, which pose an inherent risk of death or serious bodily injury.

### C. Procedural Reasonableness: Explanation for Upward Variance

Brown next challenges the district court's upward variance from the guidelines by 11 months based on what he says was his criminal history. Brown attributes the variance solely to the district court's finding that "there's not a period of time in this defendant's life where he has not been involved in some kind of criminal—there's no period of time where he's been doing right." R., vol. 1 at 134-35.

We disagree. The district court determined the variance was appropriate for several different reasons, specifically:

> the repetitive and consistent nature of this fraud over a significant period of time, involving many moving parts and other people; the danger the defendant put other people into, both coconspirators, as well as possibly other innocent parties in these staged wrecks; the fact that the presentence report did not include a sophisticated means enhancement, though the Court views this scheme as definitely one that would qualify as sophisticated means, and I view that the defendant's criminal history is underappreciated and the criminal history category is II, based on the nature of the prior contact with law enforcement and convictions.

6

*Id.* at 132-33. The district court emphasized that the scheme could qualify for a sophisticated-means enhancement because Brown "ordered fake odometers online, he got those fake odometers, he stuck them into cars that he bought, he staged wrecks, and submitted false insurance claims." *Id.* at 133. Given this detailed discussion of the circumstances warranting a variance, we reject Brown's challenge to the adequacy of the district court's explanation for the 11-month variance.

We also reject Brown's contention that a variance was inappropriate because the guidelines already captured his criminal history. A district court is entitled to rely on the same facts captured in the sentencing guidelines to support a variance, "so long as it articulates specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1222-23 (10th Cir. 2008) (brackets and internal quotation marks omitted). "This explanation need not be overly detailed." *Id.* at 1223 (internal quotation marks omitted).

Here, the guidelines reflected—and the parties stipulated—that Brown's criminal history category was II. Still, the district court rejected Brown's attempt to downplay his criminal history despite his acknowledgement that "[t]here was a period of time during which he was involved in drug dealing. He served a period of incarceration, and then there has been . . . this period of time where he was engaged in the fraud." R., vol. 1 at 135. The district court observed that "there's not a period of time in this defendant's life where he has not been involved in some kind of criminal—there's no period of time where he's been doing right." *Id.* at 134-35.

7

And in its sentencing order, the district court referenced the § 3553(a) factors and indicated a variance was warranted under § 3553(a)(1) because the guidelines "[u]nderstated [his] criminal history." R., vol. 2 at 114. The district court added that "the defendant's criminal history is not fully reflected in the criminal history category listed in the [PSR] given his life-long and consistent criminal conduct." *Id.* at 115. Given this explanation, we are satisfied that the district court varied "from the Guidelines after a careful, reasoned, and reasonable consideration of the § 3553(a) factors." *United States v. Huckins*, 529 F.3d 1312, 1320 (10th Cir. 2008).

    *D. Substantive Reasonableness: Degree of Variance from Guideline Range*

We now consider Brown's contentions that the district court's 11-month variance is substantively unreasonable. "We do not apply a presumption of unreasonableness to sentences outside the guidelines range." *Guevara-Lopez*, 147 F.4th at 1184 (internal quotation marks omitted). "Instead, we give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." *Rocha*, 145 F.4th at 1261 (brackets and internal quotation marks omitted). Our review "focuses on the district court's consideration of the § 3553(a) factors and the sufficiency of the justifications used to support the sentence." *United States v. Lawless*, 979 F.3d 849, 855 (10th Cir. 2020).

Brown asserts his variance is substantively unreasonable for three reasons. First, he disputes the district court's determination that his scheme involved sophisticated means. *See* Aplt. Opening Br. at 12-16. But the district court found that, "given the steps involved and the deliberate – the deliberation involved in

8

executing this fraud scheme, it would certainly qualify . . . as a sophisticated means." R., vol. 1 at 145. The district court explained that "[h]e ordered fake odometers online, he got those fake odometers, he stuck them into cars that he bought, he staged wrecks, and submitted false insurance claims." *Id.* at 133. The district court acknowledged "[i]t may not be a high-dollar amount, but that's a sophisticated fraud scheme." *Id.* And in its statement of reasons for the upward variance, the district court checked boxes referencing the nature and circumstances of the offense, § 3553(a)(1), as well as the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment, § 3553(a)(2)(A). The district court added that, "[i]n varying above the guideline range[, it] considered the repetitive and consistent nature of this fraud scheme over a significant period of time, involving many moving parts and bringing other people into this criminal activity." R., vol. 2 at 115. The district court "also considered the fact that the [PSR] did not include a sophisticated means enhancement that . . . would have been appropriate given the multiple steps and deliberation involved in executing the fraud scheme." *Id.* This discussion of the relevant § 3553(a) factors justifies the 11-month variance based on the sophistication of the conspiracy.[1]

---

[1] Brown expends considerable effort insisting that to apply the sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C), the district court was required to find the conspiracy was "especially complex." *See* Aplt. Br. at 12-16. But the district court did *not* apply § 2B1.1(b)(10)(C); it observed the fraud scheme would qualify as involving sophisticated means, given the complexity involved in the number of steps Brown used to execute the scheme, including his efforts to obtain and replace or roll back odometers, install them in the vehicles, enlist coconspirators, intentionally stage wrecks, and then submit false insurance claims. *See* R., vol. 1 at

Second, building on his procedural argument, Brown contends the variance was substantively unreasonable because the guidelines accounted for his criminal history. He also says there was no factual basis for the district court's finding that "there's no period of time where he's doing right." Aplt. Opening Br. at 18 (internal quotation marks omitted). But the district court reviewed the facts in the PSR, which chronicles Brown's extensive arrest and conviction record. The district court varied upward based on those facts, citing both his history and characteristics, § 3553(a)(1), and the need to protect the public, § 3553(a)(2)(C). The district court explained that Brown's "criminal history is not fully reflected in the criminal history category listed in the [PSR] given his life-long and consistent criminal conduct." R., vol. 2 at 115. In light of this explanation, Brown fails to show the district court abused its discretion in imposing the 11-month variance based on his extensive criminal record.

Finally, Brown says the variance was based on the danger to the public, which was already captured in the enhancement for the risk of death or serious bodily injury. *See* Aplt. Opening Br. at 19. He also maintains that there was no evidence he created a risk of death or serious bodily injury. *Id.* at 20. This latter point is unavailing because the district court recognized the risk of death or serious bodily injury was inherent in the staged car wrecks. *See Guevara-Lopez*, 147 F.4th at 1183

---

132-33, 145. The district court observed that these considerations, combined with the repetitive and consistent nature of the scheme over a significant period of time, along with other factors, supported the 11-month variance. Because the district court did not apply the sophisticated-means enhancement at § 2B1.1(b)(10)(C), there was no need to find the conspiracy was "especially" complex.

("A cogent and reasonable explanation for a sentence makes that sentence more likely within the bounds of reasonable choice . . . ." (internal quotation marks omitted)). And we reject Brown's assertion that the variance was substantively unreasonable because the dangerousness of the offense was captured in the enhancement. The enhancement and the variance are not coterminous. The enhancement applies because Brown's offenses involved an inherent risk of death or serious bodily injury. As the district court explained, the staged collisions, by their very nature, risked hurting people. But the variance was much broader. As the district court noted, the variance reflects the dangerousness of the offense and the need to protect the public, § 3553(a)(2)(c). R., vol. 2 at 114. Indeed, the district court explained the variance was to account for the "danger that [Brown's] activities presented to other people in staging automobile wrecks." *Id.* at 115. The district court also cited the nature and circumstances of the offense, § 3553(a)(1), including the repetitive nature of the fraud over a long period of time, the number of co-conspirators involved, the complexity and sophistication of the conspiracy, and Brown's underrepresented criminal history. Given all these distinct considerations, we cannot say the variance was substantively unreasonable.

III

The district court's judgment is affirmed.

Entered for the Court

Carolyn B. McHugh<br>Circuit Judge

11